## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

### SUBLETT & CARY v. WOOD.

#### March 23, 1882.

1. **ATTACHMENT**—*Grounds.*—This remedy is justified, not by the belief of the affiant, however honestly entertained upon reasonable grounds, that the fact sworn to in the affidavit exists, but by *the existence of that fact.* See *Claflin* v. *Steenbock*, 18 Gratt. 853.

2. **IDEM.**—*Onus probandi* that attachment was issued on sufficient cause rests on the plaintiff, and he should introduce his evidence first, when defendant moves an abatement. *Wright* v. *Rambo*, 21 Gratt. 158.

3. **CASE HERE.**—Circumstances justifying abatement.

Error to judgment of circuit court of Fluvanna county abating attachment issued by a justice in suit of Sublett & Cary *against* W. E. Wood. Opinion states fully the facts of the case.

*Alexander Coke,* for appellants.

1. The only question here is, was there "probable cause" for *believing* that defendant intended to remove his effects out of the State, so that, &c. See Joynes, J., in *Claflin* v. *Steenbock*, 18 Gratt. 858; Daniel, J., in *Spengler* v. *Davy*, 15 Gratt. 388.

2. In *Claflin* v. *Steenbock, supra,* Joynes, J., says, on p. 857, "The attachment is given on the ground that certain things exist, and the fact that they do exist is established *prima facie* by the oath of the affiant." A *prima facie* case having thus been made by the plaintiff, the burden is on defendant to overturn that case. Does the evidence here do so?

*William B. Pettitt,* for appellee.

1. Attachment is a harsh remedy and liable to abuse, and should be carefully watched by the courts. Staples, J., in *Long* v. *Ryan*, 30 Gratt. 724; Fleming, J., in *Mantz* v. *Hendley*, 2 H. & M. 308; Joynes, J., in *Claflin* v. *Steenbock*, 18 Gratt. 442 and 854.

2. When the attachment comes to be contested, the "probable fact" on which it was issued must be established by proof. Same authorities.

3. Burden of producing that proof rests on plaintiff, who in this case signally failed to produce it. *Wright* v. *Rambo*, 21 Gratt. 158.

ANDERSON, J., delivered the opinion of the court.

At a circuit court held for Fluvanna county, on the 10th of September, 1879, the following order was entered in this cause, which shows the subject of the dispute.

The plaintiffs having obtained an attachment from John A. Perkins, a justice of the peace for Fluvanna county, against the estate of the said defendant, upon affidavit that the said defendant intended to remove his effects out of this State, so that there would probably not be therein sufficient effects of the said defendant to satisfy the claim of the plaintiffs when judgment is obtained therefor, should only the ordinary process of law be used to obtain such judgment: This day came the parties by their attorneys, and the court having heard the answer, is of opinion that "the attachment aforesaid was issued without sufficient cause, and doth order that the same be abated"; and judgment was given the defendant for his costs. The plaintiffs excepted to the opinion and judgment of the court, and all the evidence in the case, being evidence introduced

by the plaintiffs, is set out in the bill of exceptions; and the question is, whether upon that evidence there is error in the judgment of the court abating the attachment.

The question upon which party the *onus* rested was left open in *Claflin* v. *Steenbock & Co.*, 18 Gratt. 853. But in a subsequent case, *Wright* v. *Rambo*, 21 Gratt. 158, it was held that upon a motion by the defendant to abate an attachment, the *onus* is on the plaintiff to show that the attachment was issued on sufficient cause, and he may therefore be required to introduce his evidence first.

Judge Joynes rightly said in *Claflin* v. *Steenbock & Co.*, *supra*, "that the general policy of the attachment laws is to furnish a stringent remedy against the defendant, under certain circumstances which make such a remedy necessary to secure the rights of the plaintiff." And again, "It is only the necessity of doing justice to the plaintiff, under such circumstances, that authorizes a departure from the general policy of the law, which secures to the debtor the control of his property until judgment has been obtained in the due course of proceeding, and from the general principle, dictated by natural justice and sanctioned by universal law, that a party shall have notice of all legal proceedings which are to bind either his property or his person."

We think that no such necessity is shown by the evidence to have existed in this case. The defendant had given his bond to the plaintiffs on the 1st of October, 1878, payable twelve months after date, for all that they claimed he owed them. They say that a part of the debt he had been owing them for several years. But they showed their confidence in him and respect for him, in taking his bond on twelve months' time for what he owed them, without interest and without security; though in the claim which they set up against him, in his absence, they claim interest from the date.

At the date of the bond, if they distrusted him, or deemed it necessary for their security, instead of giving him twelve months to pay it, without security, why did they not then resort to the usual remedy by suit? They surely did not consider it necessary to their security. It is true that he had been disappointed in realizing the profits from his farming operations which he had anticipated, and had not been able to meet punctually all his pecuniary engagements with them, which has been not an unusual experience of farmers since the late war. But there is not a particle of evidence to show, or which tends to show, an indisposition on his part to pay this debt, or an intention or inclination to dispose of his property in a way to evade its payment. On the contrary, he has ever shown that he regarded whatever property he had as chargeable with said debt, and on the 1st of January, 1879, when he was aware that his debt to them was not due for nine months, and that they could institute no proceedings against him to coerce its payment, at their request he agreed in writing to ship to them his present crop of tobacco for sale, the net proceeds to be applied to their debt, and to secure the balance gave them a lien on his five mules, which writing they held for their security. When they afterwards requested him to acknowledge it in a way that it might be admitted to record, it is true that he refused, for reasons, which he mentioned in a letter to their attorney, Mr. Ficklin, which reasons were only in part his aversion to giving publicity to his indebtedness to them, and which he did not deem necessary for their security, as the writing he gave them was binding as between the parties to it, though not recorded; and, as he says in another letter to Mr. Ficklin, he was owing very little besides. These letters were made evidence by the plaintiffs themselves, and I find nothing in the record to discredit their statements. In the letter in which he states his reasons

for not consenting to have the lien recorded, which is dated February 20th, 1879, he evidently thinks the plaintiffs' attorney ought to be satisfied with the lien he has; but whilst he says he does not intend that it shall be recorded, he intends to pay him every dollar that he owes them. It seems that on the 23d of April following, he was in Norfolk, and while there had been unexpectedly called to Nevada, with prospects of an employment which would pay him a good salary. He evidently had then made up his mind to go there. He says he may have to remain there—but that depended upon the salary he would get. And he tells him that he had given instructions to his brother John, that his present crop of tobacco must go to Sublett & Cary, also wheat crop, and everything else to be disposed of on the farm, till they are satisfied. It does not appear how long he might remain in Nevada. He did not know himself. If the salary was made to suit him, and the situation pleased him, his expectation was to to remain there doubtless as long as he was pleased and until the business was transacted in which he was to be employed. But his letter does not show that he was going with no intention of returning, or that he intended to remove any of his property there. It seems that he owned a farm in Fluvanna jointly with one of his brothers, probably his home, which he had not aliened. And he left all his personal property here, which he instructed his brother was to be applied, together with the crop of wheat then growing, when gathered, to the payment of the debt involved in this suit. If his purpose had been to defraud the plaintiffs by removing his property from the State, or to evade the payment of that debt, what was then to have prevented him from converting his property, real and personal, before he left, even for less than its value, and carrying the money with him? That he made no such attempt, but showed an earnest purpose to provide for the payment of that debt

in the communications he made to Mr. Ficklin, and on all
occasions; and the fact that he left all his property here
without any attempt to transfer it, and gave notice to the
plaintiffs, through their attorney, of his purpose to leave
and of his plans, and of the instructions he had given to
his brother John, as to the disposition he should make of
his property, in case he remained in Nevada, mainly with
the view to the payment of his debt to the plaintiffs, and
that he actually so left it without even encumbering any
part of it to raise money to take with him, absolutely re-
pelled the idea that he intended to remove his property
out of the State to evade the payment of plaintiffs' debt.
And if these facts, now disclosed, had been known to them
at the time one of them made the affidavit, upon which
the attachment was issued, they had no reasonable ground
for the belief that the defendant intended to remove his
property before they could get judgment against him, to
avoid paying their debt. Indeed, they could not have en-
tertained such a belief, without regarding the defendant as
destitute of truth and honesty, and as contriving to practice
upon them a base fraud, an assumption, which there is not
a circumstance, or a scintilla of evidence in this record, to
justify, or give countenance to.

But it is insisted that the language of the statute makes
the right to the attachment depend altogether on the be-
lief of the affiant. This subject was thoroughly discussed
by the judges in *Claflin & Co.* v. *Steenbock & Co., supra.* Judge
Joynes said: "In one sense the law gives the attachment
upon the belief of the affiant, and because he believes. But
the law does not mean to make the rights of the defendant
dependent ultimately upon the belief. What, then," he
asks, "is the 'sufficient cause' for issuing such an attach-
ment within the meaning of the 22d section? (Ch. 148,
Code of 1873.) Is it the existence of the probable fact
sworn to by the affiant, and which, according to the policy

of the law, justifies the remedy by attachment; or is it the mere belief of the affiant that such fact does exist, or will occur, entertained honestly and upon reasonable grounds?" His conclusion is "that it is the former." And this was the conclusion of the majority of the court. Judge Rives' opinion is very clear and emphatic on the point. And in that conclusion we concur.

Whether the affiant had so partial and imperfect a knowledge of the facts as would have made his belief reasonable that the defendant intended to remove his property out of the State before the plaintiffs could get judgment against him, we do not know; but of this we are convinced, that the facts, as disclosed by this record, do not warrant such a belief, but strongly repel it. We are of opinion, therefore, that there is no error in the judgment, and that the same must be affirmed.

JUDGMENT AFFIRMED.