## WYMAN *et al.* v. WILMARTH.

1. The affidavit upon which an attachment is based is *prima facie* sufficient cause for issuing the writ. But, if the facts set out in said affidavit are denied in a motion for a dissolution, the burden of proof is cast upon the plaintiff to make them good by other affidavits or other proof, in addition to that contained in his affidavit for the writ. The affirmative is upon him.
2. To sustain an allegation that the debt was contracted for property obtained under false pretenses, it is necessary to show that at the time the debt was contracted, or property obtained, there was an intent on the part of the debtor to cheat or defraud. For that purpose, some

false pretense must be designedly used; and the fraud must be accomplished by means of the false pretense; or, if not wholly by that means it must have had so material an effect upon the mind of the party defrauded that without it he would not have parted with the money or property alleged to have been fraudulently obtained.

3. The rule in relation to misrepresentations or false statements is that when the means of knowledge are at hand, and equally available to both parties, and the subject of purchase is equally open to inspection, if the purchaser or seller does not avail himself of the means and opportunities, he will not be heard to say, in impeachment of the sale, that he was drawn into it by misrepresentation.

4. The confession of a judgment by a debtor, in favor of a *bona fide* creditor, for a just and honest debt, is not a disposition of, nor evidence of an intention to dispose of property to defraud creditors; nor is the giving of chattel mortgages upon personal property, which is by law exempt from levy by execution or attachment.

(Syllabus by the court. Argued March 6, 1890. Opinion filed June 25, 1890.)

Appeal from district court, Kingsbury county. Hon. JAMES SPENCER, Judge.

Motion to vacate warrant of attachment. Sustained. Plaintiff appeals. Affirmed.

The facts so far as material are stated in the opinion.

*Lynch* and *Sterling* and *Charles L. Whiting*, for appellant.

It is the duty of one who has made a credit statement upon which credit has been given, to withdraw that statement when it becomes false by reason of changed conditions. Lindauer v. Hay, 17 N. W. 98; Lewis v Pratt, 11 Minn. 57; Zabriska v. Smith, 13 N. Y. 332. A concealed insolvent condition is the same as an actual misrepresentation. Oswego Starch Co. v. Lindrum, 10 N. W. 900; Wiggin v. Gray, 9 Gray, 97; Kline v. Baker, 99 Mass. 253; Hennegan v. Taylor, 24 N. Y. 139; Biglow v. Heaton, 6 Hill 44; Johnson v. Hall, 3 Keyes, 655; Thompson v. Ross, 16 Conn. 81; Powel v. Bradley, 9 Gill & J., 220; Bidwell v. Wales, 20 Mo. 546; Reddington v. Roberts, 25 Vt. 694; Stewart v. Emerson, 52 N. H. 301; Kahn v. Angus, 21 N. W. 81; Littlejohn v. Jacobs, 29 N. W. 545; Nuval v. Randall, 32 Minn. 171; Mann v. Forwell, 93 W. S. 631. If a purchaser has no reasonable expectation of being able to pay, it is equivalent to an intention not to pay. Talcott v. Henderson, 31 Ohio St. 162. Defendant by written statements led

the plaintiff to believe he was worth above all liabilities $11,000, and upon that belief plaintiff sold him a bill of goods. The defendant at the time was insolvent and knew it, and had no reasonable expectation of being able to pay. These are the facts from all the evidence, and are conclusive that the property for which the debt was contracted was obtained under false pretenses.

*James S. Watson* and *A. W. Wilmarth*, for respondent.

When upon a motion to discharge an attachment there is a conflict of evidence, the order of the trial court made thereon will not be disturbed unless there is a clear and conclusive preponderance of the evidence against it. Meyer *et al.* v. Zingre, 25 N. W. 727; Ellison v. Tallon, 2 Neb. 14; Cortan v. Page, 9 Ohio St. 397; Genesee Sav. Bank v. Barge Co., 17 N. W. 790. At the time defendant purchased the goods in question from the plaintiff he was solvent, from plaintiff's own showing.

BENNETT, J. This is a proceeding by attachment. On the 7th day of September, 1889, a motion to vacate the attachment was presented to the court; and on the 11th day of September, 1889, the motion was sustained, and the warrant of attachment was vacated. From this order plaintiff appeals.

The affidavit presents two grounds for the issuance of the warrant of attachment. *First,* that the debt was contracted for property obtained under false pretenses; *second,* that the defendant has disposed of, and is about to dispose of, his property, with intent to defraud his creditors. These allegations of the plaintiff were denied by the defendant, on his motion to vacate, in a clear and complete manner.

The only question presented is, does the evidence sustain the judgment of the court below. The statute requires the circuit judge or circuit court to hear the proofs and allegations of the parties; and, if a good and legal cause for suing out the writ is not satisfactorily made to appear to the court upon such hearing, it is its duty to dissolve the attachment, and, order the property returned to defendant. The affidavit of the plaintiff, his agent or attorney, is *prima facie* sufficient cause for

issuing the writ. The facts alleged, upon which the moving affidavit is based, being denied in the motion for a dissolution, the burden of proof is cast upon the plaintiff to make good the cause he alleges by other competent affidavits, or other proof, in addition to that contained in his affidavit for the writ. He must maintain the affirmative of the issue thus made in order to sustain his lien created by a levy under the writ. This rule is one which seems quite consistent with the relations the parties occupy towards each other in the proceedings. The plaintiff assumes the affirmative by his original affidavit, and the facts there alleged constitute the basis of his right to the remedy. The following authorities support this position: Wade, Attachm. § 281; Coston v. Paige, 9 Ohio St. 397; Macumber v. Beam, 22 Mich. 395; Genesee Co. Sav. Bank v. Michigan Barge Co., 52 Mich. 164, 17 N. W. Rep. 790; Sublett v. Wood, 76 Va. 318; Ellison v. Tallon, 2 Neb. 14. Keeping this rule in mind, we now proceed to the examination of the question raised upon the record, and the ruling of the district judge in the case.

As to whether the property for which the debt was contracted was obtained by false pretenses, it appears from the evidence that the defendant, George B. Wilmarth, had been since 1881 a dealer in general merchandise in the village of De-Smet, Kingsbury county, Dak., and had been doing quite an extensive business; his sales amounting some years to over $20,-000. On the 16th day of April, 1888, being desirous of purchasing a bill of goods of the plaintiffs on credit, he made to them the following general financial statement of his assets and liabilities:

## "ASSETS.

| | |
|---|---|
| Cash value of stock in store | $ 7,500 |
| Cash on hand or in bank | 200 |
| Outstanding accounts considered good | 1,000 |
| Judgments | 500 |
| Notes not secured, considered good | 1,000 |
| Notes and accounts considered doubtful | 500 |
| Real estate, 160 acres | 1,000 |
| 12 lots, dwelling, and barn in DeSmet | 2,500 |
| | $14,200 |

"LIABILITIES.

| | |
|---|---|
| For mdse. on open acc. not due.................................... ..$ | 595 |
| For mdse. on open acc. past due.................... .................. | 1,100 |
| For mdse. closed by note not due........................... ............ | 200 |
| Mortgage on homestead, due May 18, 1889........................... | 200 |
| Mortgage on homestead, due May 18, 1890........................... | 600 |
| Mortgage on other real estate, due 1890............................ | 350 |
| | $3,045" |

—Leaving him worth, above liabilities, the sum of $11,155. The plaintiffs state that, relying upon the truth of this statement, they then opened an account with the defendant, and at various times during the years 1888 and 1889 sold him goods as he ordered them; the defendant in the mean time paying cash on his account until July 24, 1889. A balance being then due to plaintiffs of $483.91, they commenced a proceeding against him by attachment. The above financial statement is the only one defendant ever made to the plaintiffs, and they allege it was false at the time it was made, in these particulars: (1) The defendant stated the mortgage on real estate to be $350, when it, in fact, was $400; (2) that he was the owner of 12 lots in DeSmet, worth $2,500, when in fact he owned only 6 lots, worth $1,300; (3) that he was indebted to his father in the sum of $128.26, of which he made no mention. These are the only tangible variations that the evidence tends to show in the statement, and militating against the truth of it, making, if true, a difference of $1,378.26. No other portions of the statement are attacked, except, inferentially, as to the amount of stock on hand at the time of the attachment in July, 1889, which was $3,619, showing a shrinkage in value or by sales, since April 16, 1888, of $3,881. The defendant in explanation of these variations and discrepancies, states that, at the time the financial statement was made to the plaintiffs, it was substantially true, except as to the indebtedness of $128.26 to his father, and, as that was not entered upon his books, it was overlooked at the time; and, as to the amount of goods on hand at the time of making the statement, he says that in January, 1888, he made an invoice of his stock of goods, and the invoice showed that he had at that time of—

Groceries...................................................$1,680 27
Dry goods and notions....   ..................................... 3,194 23
Glass, queen's-ware and stone-ware...... ....................... 254 65
Boots and shoes................................................ 1,839 76
Fixtures, including safe, show-cases, etc........................ 1,040·00

  Total....................  ............................$7,999 91

The record does not disclose the amount of sales or purchases made, from time to time, from January, 1888, to July 24, 1889, but defendant shows that the season of 1888 was a very depressing one in business; that the entire country tributary to the town of De Smet was visited by a severe hail storm, and crops were almost totally destroyed; that, in consequence of this, but little was done by way of business; that during that year his family, store and rent expense was very large, all of which necessitated the outlay of a large sum of money. None of this evidence was controverted by the plaintiffs.

Under this state of facts, can it be said the defendant was guilty of obtaining goods under false pretenses? We think not. To constitute the offense, several things must concur. There must be an intent to cheat or defraud some person. For that purpose, some false pretense must be designedly used, and the fraud must be accomplished by means of the false pretense; or, if not wholly by that means, it must have had so material an effect upon the mind of the party defrauded that without it he would not have parted with the money or property alleged to have been fraudulently obtained. It may be that the statement made by the defendant April 16, 1888, was not, strictly speaking, absolutely true in all particulars. Yet, were the misstatements made with the intention to deceive or to defraud the plaintiffs, or did the plaintiffs act under them so as to be deceived or defrauded in the transactions with the defendant? The acts of the defendant, and the circumstances surrounding the transactions between the defendant and plaintiffs, clearly show the contrary. The goods purchased at the time when the statement was made were all paid for, and circumstances over which the defendant had no control had intervened to change the financial *status* of the defendant during the months between

the making of the statement and the time the attachment was levied. The intention to deceive, defraud, and obtain property or other valuable thing is the virus that poisons the act. This is not manifest in the record before us. It is a well known fact among business men that these statements, made for the purpose of obtaining credit, are not expected to show a strict accuracy in exact dollars and cents. They are only approximate values, and based upon estimates of the person making them, and are not alone within his individual knowledge. Now, the rule of law is clearly laid down, and is as follows: When the matter is not peculiarly within the knowledge of the defendant, and the plaintiff has the means of obtaining correct information apart from the statements made to him, he may not recover upon the false declaration. Starr v. Bennett, 5 Hill, 303. The representations must be such as that the vendee has no means of discovering their falsity. If he does not avail himself of the means of knowledge within his reach, according to time and opportunity, he cannot complain. The criminal law in relation to the crime of false pretenses holds to the rule above given; and it has been resolved that when an exercise of common prudence and caution on the part of the prosecutor would have enabled him to avoid being imposed upon by the pretenses alleged, there can be no conviction. People v. Williams, 4 Hill, 9. The rule is summed up in Add. Torts, § 1185: Where the real quality of the thing spoken of is an object obvious to ordinary intelligence, and the parties making and receiving the representations have equal knowledge, or equal means of acquiring information, and the truth or falsity of them may be ascertained by the party interested in knowing, by the exercise of ordinary inquiry and diligence, and these are not made for the purpose of throwing him off his guard, and preventing him from making the inquiry and examination which every prudent person ought to make, there is no warranty of the truth of the representations, or that they are as they are stated to be; and there are no false or fraudulent warranties, within the legal definition of that phrase. The rule is comprehensively stated in Slaughter v. Gerson, 13 Wall, 383, as follows: They must

be representations relating to matters as to which the complaining party did not have at hand the means of knowledge. When means of knowledge are at hand, and equally available to both parties, and the subject of the purchase is equally open to their inspection, if the purchaser or seller does not avail himself of the means and opportunities, he will not be heard to say, in impeachment of the sale, that he was drawn into it by misrepresentation.   See, also, Davis v. Sims, Hill & D. 234; Rubber Co. v. Adams, 23 Pick. 256; Mooney v. Miller, 102 Mass. 220.   The allegations in both the plaintiffs' complaint and the warrant of attachment, show that the goods for which the debt was contracted were purchased during the year 1889; and this is not disputed.   Nearly a year had elapsed since the statement alleged to be false was made.   The immediate goods bought at the time of making it had been paid for.   The agents of the plaintiffs had visited the defendant at his place of business, and they had ample opportunity to inspect his stock of goods.   The records of the county were open, from which they could have ascertained the actual condition of all real estate the defendant might own.   No attempted concealment or misleading acts or words of the defendant are shown, whereby the plaintiffs or his agents could not at any time have judged for themselves as to defendant's true financial standing.   The rule that applies to subsequent purchasers might not be applicable to the purchase made at the time the statement was made, because the plaintiffs would not, possibly, have the same opportunity to investigate for themselves.   They would be relying upon the statements made by the defendant as to his solvency; and if the representations of defendant should be materially untrue, and the goods sold and parted with by reason of the statement, the gist of the offense would possibly have been made out.

Were we in doubt of the position assumed by us in the case before us, we think it would be removed by the following extracts from a letter received by the defendant from the plaintiffs under date of January 9, 1889—some eight months after the statement had been made which is claimed to be false—which are as follows:   "Your account is a very desirable one for any

firm to have, and we are willing and anxious to make any con-cessions and grant any favors that we can to get it. We ap-preciate very much the trade you have given us, but we want more of it. With the improved facilities we shall have in our new quarters, we feel that we can guarantee you freedom from delays and errors in filling orders; and we are sure no salesman who calls on you appreciates more fully than our Mr. Fitch that the interests of his house are best served by consulting the interests of his customers. Your trade naturally belongs to our city; and, if you can see your way to give us a large pro-portion of your trade for the ensuing year, we shall certainly try to merit it." This does not sound much as though the defendant had been making false representations or misstatements to the plaintiff's when, after eight months of business transactions, they can say to the defendant, "Your account is a very desirable one for any house to have," and "We appreciate very much the trade you have given us, but we want more of it," and "if you can see your way to give us a large proportion of it for the en-suing year, we will try and merit it." But it may be said that this letter was written under the mistaken idea that the de-fendant was worth, over and above all liabilities, the sum of $11,000, as his statement made April 16, 1888, showed. This may be true; yet it is the common observation of all business men that it is customary for them to keep a close and strict watch of all their customers, as to their habits, modes of busi-ness, and financial standing, and that a statement made as this one was is but one of the many ways they have of satisfying themselves of the desirability of the trade of any man or firm; and if, after a reasonable lapse of time has intervened to en-able them to do so, they have not availed themselves of the op-portunities at their command, they should not be heard to com-plain. With the rules of law as to the burden of proof being on the plaintiff to sustain, by a preponderance of testimony, his allegations in the moving affidavit, and the rules of law appli-cable to false pretenses, we are clearly of the opinion that this allegation has not been sustained in the case before us.

As to the second cause for an attachment, that the defend-

ant has disposed of, and is about to dispose of, his property, with intent to defraud his creditors, the record shows no disposition of any of the goods, or an intent to do so, except in the usual course of trade. It is true that on the 23d day of July, 1889, being indebted to the Kingsbury County Bank in the sum of $708.75, which was past due, the defendant did execute a confession of judgment for that sum to said bank, which was duly placed on file in the public records of Kingsbury county, Dak., upon which an execution issued, and a levy was made. The evidence further discloses the fact that, on the day this judgment by confession was rendered, the defendant executed a mortgage on all his real estate, and a chattel mortgage on a buggy, two cows and a harness, to his father, to secure him for the balance due him. It is contended by plaintiffs that the confession of the judgment, and the giving of these mortgages, was a disposition of defendant's property to defraud and delay his creditors in the collection of their debts. We do not understand how the confession of judgment by a debtor in favor of a *bona fide* creditor, for a just and honest debt, can be construed as a disposition of, or an intention to dispose of, property, to defraud creditors. If the whole transaction was *bona fide*, there could be no more fraud in it than in taking money to pay the debt, or selling property at fair value to liquidate it. The debt due the bank, for which the judgment was confessed, was an honest and just one. It was past due. No collusion between the creditor and defendant for any special benefits to either was shown or alleged, except such as the law might give them. The same could be said as to the mortgage given to the defendant's father. At the time this judgment was confessed, and these mortgages were given, the defendant was in the usual prosecution of his business, and, as appears from the record, had sufficient property in value to pay all his liabilities. All he wanted was time to make sales and collections to meet his obligations. The sending a draft for the balance due, by the plaintiffs to the defendant, through the bank—as they had an unquestioned right to do—was no doubt the unintentional cause of, and precipitated, the defendant's trouble. Previous to this,

no creditor was pressing his claim—not even the bank through whom the draft was presented, and to whom the defendant was indebted. But, as soon as defendant was known to be unable to pay the draft, the bank, realizing the effect of a protest, and perhaps not knowing to what extent the liabilities of defendant went, began to be clamorous for its pay, which resulted in the confession of the judgment by the defendant. As to the mortgages given to the father of defendant, they were given on property that was exempt under the law, and on property already heavily encumbered, and to secure the balance of an honest debt due to him. The defendant, in doing what he did, under all the circumstances as disclosed by the record, made no unlawful disposition of his property, nor showed any intention to dispose of it to defraud creditors. On both points raised by the record, we hold with the district court, and its order is affirmed.