McPike & Fox v. Atwell.

2. Verdict, not disturbed.

The judgment of the district court is affirmed.

All the Justices concurring.

---

WILLIAM C. McPIKE AND J. C. FOX, *Partners as McPike & Fox*, v. E. D. ATWELL.

1. ATTACHMENT, *When Discharged; Burden of Proof*. Where an order of attachment has been issued upon an affidavit charging that the defendant had assigned and disposed of his property with a fraudulent intent, and the defendant moves to discharge the attachment and files a counter affidavit positively denying the grounds for attachment laid in the plaintiff's affidavit, the burden is upon the plaintiff to sustain the allegations of fraud which he has made, and if he fails to do so by a preponderance of testimony, the attachment should be discharged.

2. Assignment; *Evidence Not Sustaining Attachment.* Upon the trial of the motion to discharge the attachment, the only testimony offered was a voluntary assignment executed by the defendant for the benefit of his creditors. To uphold the attachment in such a case, the deed of assignment must clearly show upon its face an actual personal intent on the part of the defendant to hinder, delay or defraud his creditors. If the instrument has been executed in good faith and solely for the benefit of the creditors, the mere fact that it may be defectively executed, or that it may contain provisions not authorized by the statute, is not alone sufficient to sustain the attachment.

3. ————— Fraud is not to be presumed from the provisions of an assignment where it will admit of an interpretation favorable to honesty and good faith.

### *Error from Osage District Court.*

This action was brought in the district court of Osage county, on August 1, 1884, by William C. McPike and J. C. Fox, partners as *McPike & Fox*, against *E. D. Atwell*, to recover the sum of $428.88 for goods sold and delivered. On the same day an affidavit and bond for attachment against the property of the defendant was filed by the plaintiffs. Among the grounds for attachment alleged in the affidavit was "that the defendant had assigned, removed and disposed of his property, or a part thereof, with intent to defraud, hinder and delay his creditors." The writ of attachment was accordingly issued and levied on a stock of drugs, oils and medicines of the defendant in the city of Lyndon. On August 4, 1884, a motion was made by the defendant to dissolve the attachment upon the following grounds: "First, that the grounds for said attachment laid in the affidavit for attachment are, and were at the date of the issuance of said writ, untrue. Second, that the grounds on which said attachment and writ were issued are insufficient in law. Third, that the attachment proceedings were defective and illegal." To support his motion the defendant filed his affidavit denying generally the grounds for attachment alleged in the plaintiffs' affidavit. The plaintiffs, to maintain the issue on their part, introduced a deed of assignment for the benefit of creditors made by the defendant on June 19, 1884, a copy of which is as follows:

"State of Kansas, County of Osage, ss.: This inden-

ture, made this 19th day of June, 1884, between E. D. Atwell, of Lyndon, county of Osage, state of Kansas, party of the first part, and H. D. Danhauer of said town, county and state, party of the second part, witnesseth:

"Whereas, the said E. D. Atwell is largely and justly indebted in sundry considerable sums of money to various persons, and whereas, the said E. D. Atwell has been unable, and is now unable, to discharge said debts, or make any satisfactory settlement of the same with punctuality or in full, or a part thereof as a full settlement thereof, and being desirous of securing to all his creditors the possession of whatever property and effects he is seized of, and to prevent an undue sacrifice of the same:

"Now, therefore, this indenture witnesseth, that the said E. D. Atwell, party of the first part, in consideration of the premises hereinafter recited, and of one dollar to him in hand paid by the party of the second part, the receipt of which is hereby acknowledged, has granted, bargained and sold, assigned, released and transferred and set over unto the said party of the second part, and by these presents does grant, bargain, sell, transfer and set over unto the said party of the second part, in trust and for the benefit of all his creditors, and in proportion to their respective claims, all and singular, the following personal property, to wit:

"My entire stock of drugs, consisting of drugs, notions, paints, oils, scales, prescription case, bottles and all shelf furniture, safe, and all patent medicines not sold on commission, stationery, blank books, store book, accounts, claims, due-bills, demands, choses in action, notes, judgments and all other evidences of debt whatsoever, belonging to said party of the first part; all being situated and contained in a two-story frame building situated on lot No. 6, in block No. 21, in the city of Lyndon, county of Osage and state of Kansas, to have and to hold the same unto the party of the second part in trust, and for the benefit of the creditors of said party of the first part, and for the following uses, intents and purposes, to wit:

"'The said party of the second part shall at once, or as soon as practicable, take possession of all and singular the personal property, effects, rights in action hereby assigned, and sell and dispose of the same, either at public or private sale, as he in his good judgment may deem advisable and for the best interest of all the creditors of said party of the first part—converting the same into money; and also to collect all and singular the debts, due-bills, notes, demands, choses in action, judg-

ments and demands, or so much thereof as may prove collect-ible, and thereupon execute and deliver all necessary acquittances and discharges, and by and with the proceeds arising from such sale and collections —

"1st. The said party of the second part shall first pay and discharge all reasonable and just expenses, and charges, and disbursements of carrying into effect this assignment, and all other charges that may become necessary for the purpose afore-said.

"2d. The said party of the second part shall proceed to pay out of the residue remaining after paying the expenses and charges after carrying this assignment into effect, the debts of said party of the first part *pro rata* and in proportion to their respective claims, whether due or to become due, first paying all secured creditors in full, as is shown and set out in Schedule A hereto attached, and all unsecured and unpreferred creditors *pro rata* in proportion to their respective claims — the said party of the first part reserving the right to correct in detail the said Schedule A, should the same on close examina-tion of proofs and books be found to be incorrectly stated in amount or otherwise.

"3d. The rest and residue remaining, if any there shall be after the expenses of sale and collection are fully paid, and all debts and liabilities have been paid and settled as aforesaid, the balance shall be paid to said E. D. Atwell, party of the first part; and for the better execution of this instrument, and the trusts and duties hereby conferred, the said party of the first part does hereby nominate and appoint the said party of the second part his true and lawful attorney, irrevocably, with full power and authority to do and perform all acts, matters and things which can or may be necessary in the premises, as fully and completely as the said party of the first part might or could have or do were these presents not executed, and attorney one or more under him to make, nominate, and appoint, as he may deem necessary, with full power of substitution and rev-ocation, hereby satisfying and approving all and everything which my said attorney shall do or cause to be done in the premises.

"In witness whereof, the said E. D. Atwell, party of the first part, has hereunto set his hand and seal, this 19th day of June, 1884.                E. D. ATWELL.

"STATE OF KANSAS, COUNTY OF OSAGE, ss.: Personally appeared before me, clerk of the district court of county and

10—34 KAS.

state aforesaid, E. D. Atwell, who acknowledged the execution of the annexed deed of assignment for the purpose herein specified, to be his own voluntary act and deed, this 19th day of June, 1884.

[Seal.]                          W. A. COTTERMAN,
                                     *Clerk of District Court.*

"I hereby accept the trust conferred on me by virtue of the foregoing deed of assignment, and assume the discharge of the duties growing out of the same, this 19th day of June, 1884.

                                     D. H. DANHAUER.

"I do solemnly swear that I will honestly and faithfully perform the duties enjoined upon me in the above and foregoing deed of assignment as assignee of E. D. Atwell, to the best of my ability.   So help me God.

                                     D. H. DANHAUER.

"Subscribed and sworn to before me, this 19th day of June, 1884.

[Seal.]                          W. A. COTTERMAN,
                                     *Clerk of District Court."*

The plaintiffs also offered in evidence the original inventory of all the property, effects and things assigned by the defendant to D. H. Danhauer, which was filed in the office of the clerk of the district court by said defendant at the time the assignment was made; also the schedule of liabilities of the defendant filed in the district court on the day the deed of assignment was made, and also a chattel mortgage executed and delivered by the defendant to one O. C. Deaver on May 7, 1884, and which was duly filed for record in the office of the register of deeds of Osage county.   No other evidence was offered upon the motion to dissolve the attachment, but it was admitted that at a meeting of the creditors of the defendant, held in the office of the clerk of the district court on July 10, 1884, pursuant to a notice given by the clerk to the creditors of the defendant as shown in his schedule of liabilities, that O. C. Deaver was duly and properly chosen assignee by the creditors.   It was further admitted that the plaintiffs took no part in that meeting, in person or by attorney; but the further admission was made that the plaintiffs had notice of the deed of assignment before this action was brought by and through their attorney

herein, who inspected and read the same. After hearing the evidence, the court, on the 4th day of August, 1884, sustained the motion of the defendant to dissolve the attachment and discharge the same. This ruling was excepted to by the plaintiffs, who bring the case here for review.

*Smith & Solomon,* for plaintiffs in error.

*S. B. Bradford,* and *E. A. Austin,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: In the affidavit filed by plaintiffs for the purpose of obtaining an order of attachment, several grounds were stated, but in the trial of the motion to dissolve the attachment the only one apparently relied upon was that the defendant "had assigned, removed and disposed of his property, or a part thereof, with the intent to defraud, hinder and delay his creditors." When the defendant moved to discharge the attachment, he filed a counter affidavit denying the charges

1. Attachment, when discharged; burden of proof.

of fraud made by the plaintiffs. The burden was then upon the plaintiffs to sustain the allegations of fraud which they had made, and if they failed to do so by a preponderance of testimony, the court rightfully discharged the attachment. As mentioned in the foregoing statement, the only proof offered to sustain the charge was the deed of assignment made by the defendant, together with the accompanying papers filed therewith and referred to therein. Nothing was offered tending to show bad faith on the part of the defendant, nor was there any attempt to prove that the assignment was made by the defendant for the purpose of defrauding, hindering or delaying his creditors, unless such intent is shown upon the face of the conveyance. It is claimed to be fraudulent and void by reason of defective execution, and because it contains provisions not in accordance with the statute relating to assignments. It should be remembered, however, that the validity of the assignment was not the question before the court, but it was rather whether such assignment was executed in bad faith. To sustain the charge made

and uphold the attachment there must have been an actual personal intent to defraud, hinder or delay the

**2. Assignment; evidence not sustaining attachment.** creditors of the assignor. The assignment may be informal, and may contain provisions which are not in compliance with the statute, and which would render it invalid; but if it was made in good faith, and without any actual intent to defraud, hinder or delay creditors, it is not alone sufficient to sustain the attachment. Of course an assignment might contain provisions which would be so clearly inconsistent with honesty of purpose as would upon its face show actual moral fraud, and which would support an attachment obtained on that ground; but we cannot pre-

**3. Fraud, when not presumed.** sume fraud from the provisions of an assignment unless such provisions are clearly inconsistent with honesty and fair dealing. In a case much like the one at bar this court has said:

"It must be remembered that the material question in this case is. simply whether the attachment is valid, and that all questions with reference to the assignment arise only incidentally. This case is wholly unlike a case where an execution, with regard to the regularity and validity of which there is no question, or a case where an order of attachment, with regard to the regularity and validity of which there is no question, is levied upon property which is claimed by some person other than the defendant in the execution or the attachment proceedings, and claimed by him by virtue of an assignment made to him by such defendant of the property in question in trust for the benefit of creditors. In such a case the validity of the assignment arises fairly and squarely. In a case like this, however, the assignment can be used only for the purpose of tending to prove or disprove the good faith or the fraud of the defendant in making the assignment. If he made it for the purpose of defrauding his creditors, then it tends to uphold the attachment; but if he made it in good faith, it does not so tend to uphold the attachment, although possibly for some technical reason it may be void. The assignment may be void in this case, and yet the plaintiffs may not be entitled to their attachment." (*Harris v. Capell*, 28 Kas. 120, 121. See also *Milliken v. Dart*, 26 Hun, 24.)

The first objection to the deed of assignment is, that the

certificate of acknowledgment is defective and insufficient in not stating that the person making the acknowledgment was the same person who executed the instrument. This is purely technical, and however it may affect the instrument as between the assignee and the creditors of the assignor, it certainly does not of itself disclose any bad faith on the part of the assignor in making the deed.

It is next claimed that a fraudulent intention is shown in the preamble of the deed of assignment, which recites that one purpose of the conveyance is to prevent an undue sacrifice of the property assigned; and we are cited to the case of *The German Insurance Bank v. Nunes*, 80 Ky. 334, as being in point, and as holding a like statement in an assignment, to be an evidence of bad faith on the part of the assignor. We do not think the case is applicable here. There the validity of the deed was directly in issue. It contained a statement that the assets of the assignor were largely in excess of his liabilities, and the avowed purpose of the conveyance was to prevent a sacrifice of the property and *to leave a residue to the debtor;* thus showing that the assignor was not insolvent, and that his purpose was not to secure as much as possible to the creditors, but, on the contrary, to obstruct the creditors in the enforcement of their legal remedies in order that the debtor might be benefited. In this case, the deed shows the defendant to be unable to pay his debts in full, and coupled with the statement that he desires "to prevent an undue sacrifice of his property." It is specifically stated that he is desirous of securing to all his creditors the possession of all his property, and he therefore conveyed the same to the assignee in trust for the benefit of creditors alone. No restriction was imposed upon the assignee in the disposition of the property, nor was there anything in the language of the deed, as in the Kentucky case, which showed a reservation of any interest in the assignor, or that he looked forward to a return of any residue from the proceeds of the sale of the property. Such a reservation might indicate that the real intent of the assignor was not to devote his property to the payment of his debts, but rather to hinder and

delay the enforcement of payment. But in the connection in which the objectionable phrase is used in the deed in this case, we may fairly infer that the purpose of the assignor was to preserve his property from waste through litigation for the sole benefit of his creditors, and that the same should be distributed in accordance with their respective rights. When we read the provisions of the instrument together, we find nothing in the one objected to which warrants the inference of fraudulent intent — nothing necessarily inconsistent with honesty and fair dealing.

Another evidence of dishonesty of purpose is said to be apparent on the face of the instrument in the alleged preference of a creditor. It is doubtful whether any preference was actually intended or made in the deed of assignment. The claim of the creditor referred to was one shown in the assignment to be secured by a chattel mortgage. If the chattel mortgage was made in good faith, and there is no evidence to the contrary, the law would prefer the claim thus secured independent of any of the provisions of the assignment, to the extent of the property mortgaged; and we do not think the instrument can be fairly interpreted as intending any preference beyond what the law would make under the terms of the mortgage. The objectionable provision may be treated as a notice to the assignee of an existing lien on the property conveyed, and certainly we cannot see that it discloses a dishonest motive on the part of the assignor. Even if the provision objected to was treated as a preference, a fraudulent intent is not necessarily inferable therefrom. While in the case of a voluntary assignment a preference would probably operate to defeat the instrument, ( *Tootle, Hosea & Co. v. Coldwell,* 30 Kas. 134,) yet so far as the attachment proceeding is concerned, no dishonest motive is necessarily to be imputed to a preference, for under the law a debtor in failing circumstances may prefer creditors, providing it is done in good faith.

Other objections are made to the form and language of the conveyance, and on account of the informal and unusual provisions incorporated therein it is justly open to criticism.

Possibly some of these defects might operate to defeat the assignment if its validity was directly attacked, but in none of them do we see an apparent intent of the assignor to hinder, delay or defraud his creditors. No circumstances outside of the deed, nor any word or act of the defendant, prior or subsequent to the assignment, are shown in support of the claim of fraudulent intention. We can only look at the face of the deed, and if it admits of a construction consistent with good faith, it should be so interpreted rather than to impute dishonesty to the assignor in its execution.

The order and judgment of the district court will be affirmed.

VALENTINE, J., concurring.

HORTON, C. J.: As to the second subdivision of the syllabus, I do not agree as applied to the facts of this case, nor do I assent to all said in the opinion.