## Richmond.

WINGO, ELLETT & CRUMP V. PURDY & CO.

March 5th, 1891.

1. EQUITABLE JURISDICTION AND RELIEF—*Attachments—Immature debts.*—Attachments cannot be maintained on *undue* debts, on the ground that the debtors are non-residents, unless they have disposed or are about to dispose, fraudulently, of their effects. And upon abatement, the court cannot retain the suit and grant relief, but must dismiss the bill. Code, § 2964.

2. FRAUDULENT INTENT—It is not enough that creditors believe and allege the existence of fraudulent intent. They must prove its existence.

3. IDEM—*Case at bar.*—In case here the debts were not due, and though the debtors were non-residents and had effects in the county where the suit was instituted, yet, as no fraudulent intent was proved: *held,* the attachments must be abated and the bill dismissed.

Appeal from decree of circuit court of Greensville county, rendered April 22d, 1890, in a chancery suit wherein Charles E. Wingo, John S. Ellett and James D. Crump, partners in business in the name of Wingo, Ellett & Crump, were complainants, and N. Purdy, L. S. Purdy, and B. G. Team, late partners in the name of Purdy & Co., were defendants.

This suit was by foreign attachment in equity, instituted in the county of Greensville, in the State of Virginia, by the appellants, a firm of Richmond city merchants, against the appellees, a firm of merchants doing business in Camden, South Carolina. The claim of the plaintiffs was upon store accounts, for goods in their line sold upon an express and agreed credit, upon stated periods, and none of the debts of

the plaintiffs were due and payable when the suit was brought.
But the alleged ground of the suit was that the defendants
had assigned and disposed of their property with intent to
hinder, delay and defraud their creditors, and the jurisdiction
of the said Virginia court was invoked upon the ground that
these citizens of South Carolina owned property in the said
county, and within the jurisdiction of the said circuit court
of Greensville county. The defendants demurred and an-
swered, and depositions were taken on both sides; and the
cause coming on to be heard on the 22d day of April, 1890,
in the said circuit court of Greensville county, the said court,
being satisfied from the whole record that the attachments in
this cause were issued upon false suggestions and without
sufficient cause, decreed that the said attachments be abated
and the original and amended bill be dismissed. From this
decree the plaintiffs appealed.

*Pollard & Sands*, for the appellants.

*Davis & McIlwaine*, for the defendants.

LACY, J. (after stating the case), delivered the opinion of
the court.

The grounds upon which the attachments in this suit were
sued out were the alleged belief on the part of the attaching
creditors that the defendants intended to make an assignment
with intent to hinder, delay and defraud their creditors.
Their debts were not due, and they had no right to bring suit
except upon that ground, and the circuit court could not,
therefore, entertain them at its bar except upon that ground.
The first question to be considered, therefore, is whether any
such ground *existed*—that is, whether the defendants *actually
intended* to make an assignment, with the fraudulent intent
ascribed to them—not whether the plaintiffs actually believed

it. They might entertain this belief unchallenged, and still have no just cause of action. The question is, whether such fraudulent intent existed. The ground for their belief was that the defendants had issued a circular-letter to their creditors, of the 30th of November, 1889, and sent a copy to the plaintiffs, in which they had asked for an extension of time— an indulgence from their creditors of three, eleven, fourteen, and eighteen months—in consequence of the failure of the cotton crop, the great staple product of the section of country where they were doing business, accompanied by a statement of their business, wherein their assets were stated at $81,688.13, of which $50,588.13 were the obligations of their customers, who had had a bad cotton year, and were not able promptly to meet their payments; whereas their liabilities were $61,-018.99, showing a probable solvent balance of over $20,000— together with the declaration to the creditors that, if pressed, they would be compelled to make a *general assignment* for their benefit, in order to do justice to all, but proposing, by the permission of their creditors, to continue business, and, after keeping their business going, to *pro rate* all collections in payment of their debts.

The plaintiffs, observing a diminution of assets from an alleged registry filed with Dun's Agency, of Richmond, wrote for an explanation of this. On the 2d of December, 1889, the defendants replied, explaining that one of their firm in South Carolinia had mortgaged a part of his estate to raise money for a separate business, to the amount of $16,000, and referring to a farm in Virginia, of which the clerk of the court of Greensville county would give them information, and that, in making up their statement, they had only set down what they thought money could be realized from promptly, and alleging a purpose to surrender everything if necessary, and to do their best that no person should lose anything by them.

The plaintiffs getting this information of real estate in Virginia, responded by hastening to Greensville county and at-

taching the property situated there.    Other creditors ·acted very differently.    Creditors in Charleston, S. C., consisting of eleven firms, agreed to grant the extension asked, saying: "We have considered their proposition, and, from our knowledge of them and their business, we think it advisable to agree to the same, and recommend a like course to the other creditors.    *We have perfect confidence in the honesty and capability of the members of the firm, and believe that their embarrassment is due to their failure to make collections."*

The Charlotte Manufacturing Co., in North Carolina, responded promptly, on the day the circular was received, as follows:    "It is with profound regret that I learn of your embarrassment.    When I tell you that it is rarely that I enter into any condition of settlement other than a strict compliance with our terms, you will better appreciate my high personal regard for you, when I state that my confidence in you is such that I accept the situation with deepest sympathy for you, believing that only dire, imperative necessity would cause you to apply for an extension of time," &c., &c.    Letters similar to this one just cited were received from twenty other creditors of the firm, and were copied in the record, but not printed by consent of counsel.

There is nothing in the record to impeach the fairness and good faith of the said defendants, except what has been set forth, and a deed of gift, openly and obviously a voluntary deed, before made by them, of $500 worth of land to their mother, situated in the county of Brunswick, which was brought in by the amended bill in the cause and the proceedings thereunder.    There was no pretence that this deed was for a valuable consideration, so as to defeat the debts already contracted, and no actual fraud connected with it; it was merely voluntary.

The circuit court of Greensville, finding no proof of any intent on the part of the defendants to defraud their creditors, abated the attachments; and this was plainly right.    But the

appellants insist that the court erred in dismissing their original and amended bills; that the defendants were non-residents, and had estate or effects belonging to them within the jurisdiction of the court, and that the court, thus having jurisdiction, should have retained their bills and granted them relief. But such is not the law. Their debts were not due when the suit was brought, and the circuit court had jurisdiction of their case solely upon the ground that the defendants, although their debts were not due, were about to make an assignment with intent to hinder, delay, and defraud their creditors. And the very section of the Code of Virginia (2964) which vitalizes their right of action for a debt not payable, upon the ground of fraudulent intent, provides that: "This section shall not be construed as giving to a court of equity jurisdiction to enforce by attachment a claim to a debt not payable, when the only ground for the attachment is that the defendants, or one of the defendants, against whom the claim is, is a foreign corporation, or is not a resident of this State, and has estate or debts owing to the said defendant within the county or corporation in which the suit is, or is sued with a defendant residing therein." So that proof of the fraudulent intent was essential to the jurisdiction of the court, and, that ground failing the plaintiffs, their suit failed them, and there was nothing left for the court to do but to dismiss their bills.

We think the circuit court of Greensville was plainly right in abating the attachments. There was no proof whatever of any fraudulent intent, but the contrary intention is everywhere patent and obvious. A *bona fide* request for an extension of time cannot be held to constitute a badge of fraud, and a declaration of a purpose, if necessary, to make a general assignment for the benefit of all creditors, and to surrender everything, if required, for the purpose of paying the last dollar of indebtedness, cannot reasonably be held to be evidence of a fraudulent purpose. Of the creditors, thirty-two other firms to whom these defendants were indebted, and who

resided near to them, and perhaps knew them better, took a very different, and, doubtless, a more correct view of this proposition for an extension of credit, especially as the presence of assets, largely exceeding the aggregate amount of their debts, gave promise of payment to all, and rendered the fulfilment of their promises possible.

Upon the whole case, we are of opinion to affirm the decree appealed from.

DECREE AFFIRMED.