## The Champion Machine Company v. Updyke & Stone.

1. ATTACHMENT, *Vacated — Review — Conclusive Finding*. Where a motion to vacate an attachment is made before a judge of the district court because the grounds alleged therefor are untrue, and he makes a finding upon conflicting oral and written evidence that the grounds are untrue, such finding is as conclusive upon the supreme court as is the verdict of a jury based on like evidence.

2. ———— *Burden of Proof*. Where the defendants deny the grounds alleged for attachment, and move to discharge the same, the burden is upon the plaintiff to prove the charges of dishonesty and fraud alleged against defendants.

3. EVIDENCE *Sustains Finding*. The evidence in the case examined, and *held* to be sufficient to sustain the finding made by the judge in favor of the defendants.

*Error from Clark District Court.*

THE opinion states the case.

*E. Sample*, and *Hurd & Dunlap*, for plaintiff in error.

*W. B. Williams & Son*, and *W. C. Webb*, for defendants in error.

The opinion of the court was delivered by

JOHNSTON, J.: This proceeding is brought to review an order of the judge of the district court of Clark county, vacating and setting aside an order of attachment. Updyke & Stone were dealers in hardware, farm machinery, and implements, at Ashland, and carried a stock of goods ranging in value from $6,000 to $9,000. They became embarrassed in 1888, and the Champion Machine Company, one of their creditors, procured the issuance of an attachment and caused it to be levied upon their stock of goods. The amount claimed by the plaintiff was only $154.44, and the grounds of attachment were that the defendants were about to dispose of their property, and had disposed of their property, with the intent to defraud, hinder and delay their creditors, and also that they had fraudulently contracted the debt for which action was brought. The defendants filed an affidavit denying the grounds alleged for attachment, and moved the court to discharge the same. On January 24, 1889, a hearing was had upon the oral and written testimony before the judge at chambers, and, finding that the grounds for the attachment were untrue, the judge vacated and discharged the attachment. The plaintiff complains of this order.

It is contended that the order of attachment was properly dissolved, upon the evidence, and also because it was illegally issued. The ground of illegality is, that the petition shows that the debt of defendants to plaintiff was not due when the action was begun, and that no order of attachment was granted by the court or judge, as is required to be done where the debt is not due. The allegations and actions of the plaintiff are inconsistent and faulty in this respect. No application for an order of attachment was made to the court or judge, and none such was granted. It is stated in the petition that on September 6, 1887, the defendants executed and delivered to plaintiff several promissory notes, aggregating $1,042.44, which matured at different times, running from January 1, 1889, up to January 1, 1890. The notes are copied at length in the pe-

tition, and the plaintiff states the time when each will mature, and the amount which will then be due on each. This action was begun on December 7, 1888, 24 days before any of the notes became due, and nearly 13 months before the last one became due. The petition, after alleging the amount due upon each note, states that all of the claims thereon are just, true, and remain wholly unpaid, and that "plaintiff is the lawful and present holder of each and every of the said notes; that the said notes were made, executed and delivered by the said defendants to the said plaintiff for certain goods, wares and merchandise sold and delivered by said plaintiff to said defendants on or about April, 1887; that the said goods, wares and merchandise were so sold by said plaintiff to said defendants upon representations made by said defendants at said time as to their financial standing and responsibility, all of which representations were untrue and false in fact, and the said defendants knew at the time that the same were false and untrue; that upon learning that the representations so made by defendants were untrue and false, the plaintiff immediately offered to and did disaffirm and rescind said contract of sale, and offered and now offers to the said defendants the said notes; that the defendants were indebted to the said plaintiff in the sum of $1,042.44, for goods, wares and merchandise sold and delivered to them by said plaintiff as aforesaid; that there is now due to the said plaintiff from the said defendants therefor a balance of $154.44," for which latter sum judgment is asked, with interest from December 5, 1888.

It will be seen that plaintiff still claims to be the holder of the notes; that the defendants are still indebted upon the notes; that they are just, true and correct claims; and that they remain wholly unpaid. If they were then existing claims against defendants, the plaintiff's debt was not due, and the attachment was illegally issued. There are other averments, however, indicating to some extent that plaintiff is not claiming upon the notes, but has disaffirmed the notes and the contract of sale in pursuance of which the notes were given; but the petition does not state whether payments were

made or property returned and credited upon the original
debt represented by the notes; neither does it show how the
debt was reduced to $154.44. That is the only sum, how-
ever, for which judgment was claimed, and it is alleged to be
past due. The petition is very ambiguous and indefinite as to
how the alleged rescission was effected, and as to how the
debt alleged in one part of the petition to be extant was di-
minished to the small amount for which judgment was asked.
Looking into the testimony, we see that the question of al-
leged rescission is still a controverted one, but the petition it-
self affords but little light on the subject. It is stated that
the defendants misrepresented their financial condition when
the goods were purchased, and upon this ground the right to
disaffirm is claimed. It appears that these representations,
whether true or false, were made nearly two years prior to
the alleged disaffirmance, and that during this period other
business transactions were had between the parties. Although
the petition is indefinite, no motion was made against it for
that reason; and although the affidavit for attachment may
not fully state the nature of the plaintiff's claim, that was not
made a specific ground for the discharge of the attachment.
In view of the way these defects are raised, it cannot be said
that the order of attachment was illegally issued. It is evident
that the trial judge did not rest his judgment on these de-
fects, as a hearing was had on the merits of the motions, and
manifestly he found the grounds alleged for attachment to be
unsustained.

The evidence in the case, although not satisfactory in some
respects, is of such a character that the finding of the judge
cannot be disturbed. The testimony in the record is partly
oral and partly written, and much of that which was taken in
the form of affidavits and depositions was incompetent. It
was also conflicting as to the grounds laid for attachment; and
as the judge was the trier of the facts, a finding
made by him upon a conflict of testimony is bind-
ing upon us. *Hegwer. v. Kiff,* 31 Kas. 440, is
cited as an authority that this court is not bound by the find-

1. Attachment, vacated—re-view—conclu-sive finding.

ing of the district court, and that we may weigh the testimony and determine its sufficiency. In that case, however, the testimony was all contained in affidavits; and where that is true, this court is as competent as the district judge to determine what facts are established by the testimony; but where the testimony is partly oral and partly in writing, and there is testimony tending to sustain the finding and order of the district judge, his finding thereon is as binding upon the court as if it had been made by a jury. (*Urquhart v. Smith,* 5 Kas. 447; *Doggett v. Bell,* 32 id. 298; *Curtis v. Davis,* 44 id. 144.)

The testimony is not clear or satisfactory as to the original contract between the parties; as to the authenticity of the reports made to commercial agencies on the financial standing of defendants; as to what was shown by their book accounts that were used on the hearing; as to the consideration for some of the conveyances made by defendants during the time they were in business; nor as to the transfers and assignment made about the time this action was begun. The principal contention is that the debt was fraudulently contracted, through the misrepresentations of the defendants. The original contract upon which the indebtedness arose was made in December, 1886, almost two years before the commencement of the attachment proceedings. A written statement, admitted to have been made by Updyke at that time, as to the financial condition of the firm, appears to have been substantially correct. The same may be said of the other reports as to the condition of the firm that are admitted by defendants to have been made. Of course, they are not chargeable with representations made by others, and of which they had no knowledge. The agent of the plaintiff says that oral statements were made on December 20, 1886, when the original contract was made, with reference to the financial ability of the members of the firm, which, if made, were untrue; but Updyke denies that such statements were made, and the fact that they were not included in the written one tends to sustain his denial. He also denies that he made other exaggerated statements of their condition that were attributed to him.

It is difficult to reconcile the contradictory statements found in the testimony; but the district judge had a better opportunity for determining the real facts in the case than we have, and there is testimony to sustain the claim of the defendants that the contract was fairly made, and that they had not transferred, and were not about to transfer, their property, with the intention to hinder, delay and defraud their creditors. The dealings between the parties were considerable, and the debt which at one time was quite large has been reduced to the sum of $154.44. Then there is the testimony of Updyke, that he offered to turn over to plaintiff all of the mowing machines on hand, at the cost price in Ashland, which, if accepted, would have about discharged the entire indebtedness. It is true that conveyances were made to several parties to whom the defendants were indebted, and an assignment for the benefit of all the creditors appears to have been made. The testimony tends to show that the debts secured or paid by transfers made prior to or about the time of their business failure were *bona fide,* and their right to honestly prefer creditors cannot be denied. Some of the conveyances made were not promptly recorded, and perhaps the most serious objection that is made to the action of the defendants is the transfer by Updyke of some individual property in Michigan and Kansas, about a year prior to the failure. It is contended that the transfer was made without any consideration. There is no testimony whatever as to the consideration for the transfer of the Michigan property; and although Updyke was the witness of the plaintiff, and in answer to questions propounded by plaintiff stated that the conveyance was made to his wife, they did not inquire of him respecting the consideration, and did not show by any testimony that it was without consideration. The mere fact that the transfer was made to the wife does not show dishonesty; and the defendants having denied the grounds for attachment, the burden rested upon the plaintiff to sustain the allegations which it had made, and to show that the conveyance was without consideration. (*McPike v. Atwell,* 34 Kas. 142; *Becker v. Langford,* 39 id. 35; *Grocery*

*Co. v. Records*, 40 id. 119.) In an abstract found in the record, the stated consideration for the sale of Updyke's Kansas land is $1; but it also shows that the land was conveyed subject to a large incumbrance. What the real consideration was is not shown. Updyke was called as a witness by the plaintiff, and was interrogated as to this property, but it stopped short of inquiry concerning the conditions of this sale, and did not ask him anything about the consideration. It devolved upon the plaintiff to establish a want of consideration, and, as fraud is not presumed, it devolved on it to prove the charges of fraud which had been made. We have read the large volume of testimony taken in the case, competent and incompetent; and while some of the matters are not satisfactory, we cannot say that the finding and order of the judge are clearly erroneous. The finding being in favor of the defendants, their testimony, although contradicted, is to be taken as true, and all reasonable inferences are to be drawn in support of that finding. In this view, we feel compelled to say that the finding is not without support, and hence the order of the district judge will be affirmed.

2. Burden of proof.

3. Evidence sustains finding.