### TREBILCOCK V. BIG MISSOURI MINING CO.

1. Though a mortgage by an insolvent corporation to its president, of substantially all its property, may be ineffectual to give him a preference, as against its creditors, it does not authorize an attachment on the ground that the corporation has disposed of its property with intent to defraud its creditors (Comp. Laws, § 4995, subd. 5); the evidence of the corporation that it was executed in good faith and for money advanced, and without any intent to defraud, not being overcome.

2. One cannot attach on the ground that a mortgage given and recorded before he became a creditor was with intent to defraud, though he had no actual notice of it before he gave credit.

(Opinion filed Aug. 19, 1896.)

Appeal from circuit court, Lawrence county. Hon A. J. PLOWMAN, Judge.

Action by Richard Trebilcock against the Big Missouri Mining Company, a corporation. Motion to dissolve an attachment was denied, and defendant appeals. Reversed.

The facts are stated in the opinion.

*Frawley & Laffey*, for appellant.

The question of fraudulent intent is one of fact and not of law, the presumption of law being that the defendant is inno-

cent until it is shown that it is guilty.   §§ 3509, 4659 and 3298, Comp. Laws; Gaines v. White, 1 S. D. 434; Waples on Attachment 57; 1 Am. & Eng. Encyc. of Law 900; Harris & Co. v. Capell, 28 Kan. 117; McPike v. Atwell, 34 Kan. 142; Hunter v. Seward, 15 Neb. 215; Steele v. Dood, 14 Id. 496; Black Hills Merc. Co. v. Gardner, 5 S. D. 246, 58 N. W. 557.   The burden of sustaining the attachment after the grounds upon which the same was issued have been denied, is upon plaintiff.   Deering & Co. v. Warren, 1 S. D. 35.   "A debtor may pay one creditor in preference to another, or may give to one creditor security for the payment of his demands, in preference to another." § 4654, Comp. Laws; Sandwich Mfg. Co. v. Max, 5 S. D. 125; Cutter v. Pollock (N. D.), 59 N. W. 1062.   A corporation in failing circumstances, in possession of its property, may make preferences among its creditors, and the fact that the preferred creditor is an officer of the company, does not change the rule. A mortgage or conveyance made under such circumstances is not even constructively fraudulent if the transaction is otherwise fair.   Gorder v. Plattsmouth Canning Co., 54 N. W. 830; Gould v. Railroad, 52 Fed. 680; Hollins v. Brierfield Co., 14 U. S. Sup. St. Rep. 127; Schufeldt v. Smith, 31 S. W. 1039; Buel v. Buckingham, 16 Ia. 284; Morawetz on Corp. (2nd Ed.) § 802.

*James P. Wilson*, for respondent.

The directors and officers of an insolvent corporation are trustees for the creditors and must manage its property and assets with strict regard to their interests; and if they are themselves creditors, while the insolvent corporation is under their management they cannot secure to themselves any preference or advantage over other creditors.   Hayward v. Lumber Co., 64 Wis. 639; Cook v. Berlin Wool Co., 43 Id. 433; *In re* Taylor Orphan Asylum, 36 Id. 534; Pickett v. School Dist., 25 Wis. 551.   An insolvent corporation cannot pay a debt due to a director in preference to debts due others, either by turning out property to him or by giving him a mortgage on corporate assets.   Cook on Stock and Stockholders, § 661.

CORSON, P. J.    This is an appeal from an order overruling a motion to dissolve an attachment.    The warrant of attachment was issued upon an affidavit stating that the defendant had assigned, disposed of, and secreted its property with intent to defraud its creditors, and was about to assign, dispose of, and secrete its property with like intent.    The motion was made to dissolve the attachment on the ground that it was improvidently issued.    The defendant, with its notice of motion to dissolve the attachment, served an affidavit of its managing agent denying the charges of the plaintiff in its original affidavit as the grounds for his attachment, and also other affidavits, setting up various matters that will be noticed subsequently.    The plaintiff read on the hearing a number of affidavits in support of his original affidavit.    From these it appeared that the defendant was a mining corporation, and was engaged in the business of extracting and milling ores from its mine in Lawrence county, and that at the time the warrant of attachment was issued, in January, 1894, the defendant was, and for several months prior thereto had been, indebted in considerable amounts to various parties, which it was unable to pay as the same matured, and was therefore insolvent.    It further appeared that in August, 1893, the defendant executed a real estate mortgage on its mining property in Lawrence county, to its president, Milo J. Luther, to secure the payment of four promissory notes amounting to $141,586.27.    This mortgage was assigned three days after its execution to Ezra H. Bailey, of Streator, Ill., for the consideration, as expressed in the assignment, of $90,500.    It further appeared that on the same day the said defendant executed a chattel mortgage to said Ezra H. Bailey to secure payment of the sum of $3,500, in which mortgage was included the pumps, hoisting engine, ore cars, tools, ore in bins, etc.    The plaintiff also read affidavits tending to prove that the defendant's mining property was of less value than the amount the real estate mortgage was given to secure, and that the improvements thereon, including machin-

ery, did not exceed $75,000. There was also evidence tending to prove that Mr. Bailey, the assignee of the mortgage, was a man of limited means. This was substantially all the evidence on the part of the plaintiff to sustain the charges made in his original affidavit as the grounds of his attachment. On the part of the defendant it was shown, by the affidavit of its managing agent and one of the directors of the corporation, that the mortgages were executed in good faith, and that the amounts they were given to secure were actually due for moneys advanced to the corporation, and were not executed with any intent to defraud its creditors. Affidavits were also read on the part of the defendant tending to prove that defendant's mining property was of the value of from $200,000 to $300,000, and also tending to explain the reasons why the defendant was unable to pay its creditors as their claims matured. The indebtedness for which the attachment was issued as appears from the original affidavit of the plaintiff, was incurred during the months of November and December, 1893, and January, 1894,—some months subsequent to the execution of the mortgages referred to. There was no evidence tending to prove that defendant had assigned or secreted its property, or that it was about to assign or secrete it, fraudulently or otherwise. The only question, therefore, presented for our determination, is, did the evidence sustain plaintiff's charge in his original affidavit that defendant "had disposed of" its property with intent to defraud its creditors?

The attachment was issued under Subdivision 5, Sec. 4995, Comp. Laws, which provides that a warrant of attachment may issue upon affidavit stating that the defendant "* * * has assigned, disposed of, or secreted, or is about to assign, dispose of or secrete, any of his or its property with the like intent [intent to defraud his creditors], whether such defendant be a resident of this state or not." Assuming for the purposes of this decision that the term "disposed of" embraces a real estate mortgage and a chattel mortgage, was there a pre-

ponderance of evidence in this case tending to prove that the mortgages above referred to were executed with intent to defraud the creditors of ,the defendant? We say "preponderance in favor of the plaintiff," as the burden was upon him to establish the fact. Wyman v. Wilmarth, 1 S. D. 172, 46 N. W. 190; Wilcox v. Smith, 4 S. D. 135, 55 N. W. 1107; McPike v. Atwell, 34 Kan. 142, 8 Pac. 118; Strauss v. Abrahams, 32 Fed. 310; 1 Shinn, Attachm. § 115. The intent to defraud must exist as a fact, and will not be sustained by the evidence of a constructive fraud, or fraud in law. 1 Wade, Attachm. § 96; 1 Shinn, Attachm. § 110. It will not be necessary to establish such fraudulent intent by direct evidence, but it may be gathered from the circumstances, provided inferences of a fraudulent intent are fairly warranted, and follow as a legal sequence of the facts proved. Ellison v. Berstein, 60 How. Prac. 145; Strauss v. Abrahams, *supra*; 1 Shinn, Attachm. § 115. Ordinarily the execution of a mortgage by an insolvent debtor, unless made in bad faith and with an actual intent to defraud, will not alone be sufficient to sustain a charge that defendant has disposed of his property with intent to defraud his creditors. Ray v. Gore. 41 N. W. 329, 73 Mich. 385; Tenny v. Diss, 32 Neb. 61, 48 N. W. 877; Wingo v. Purdy, 87 Va. 472, 12 S. E. 970; Henry v. McClure (Kan. Sup.) 22 Pac. 319; Hosea v. McClure, 42 Kan. 403, 22 Pac. 317; Britton v. Boyer, 27 Neb. 522, 43 N. W. 356; 1 Shinn, Attachm. § 122.

The respondent contends, however,—and such must have been the view of the learned trial court—that an insolvent corporation could not legally execute a mortgage to its own president, of substantially all of its property, to the exclusion of its other creditors, even for a just debt. . While this is correct, as a legal proposition—Adams-Westlake Co. v. Deyette (S. D.) 59 N. W. 214, 65 N. W. 471,—still it does not follow that the execution of such a mortgage will constitute sufficient evidence of an actual intent to defraud creditors. It may be assumed in this case, within the evidence, that the defendant corporation

was insolvent. Buchanan v. Smith, 16 Wall. 277; Brouwer v. Harbeck, 9 N. Y. 589. But the execution of the mortgage may have been made without any actual intent to defraud, and under the honest belief that the corporation was authorized to execute, and the president to receive, such mortgage. So far as the chattel mortgage executed to Bailey is concerned, there was no evidence to impeach it. And, so far as concerns the real estate mortgage, the evidence that it was executed in good faith, and for money advanced, and without any intent to defraud creditors, is not controverted by any direct evidence, and not by circumstantial evidence sufficient to impeach it. An assignment for the benefit of creditors, held to be invalid and without effect by reason of a failure to comply with the requirements of the statute, was nevertheless held not to constitute any evidence of an actual intent to defraud, and therefore constituted no ground for an attachment. Milliken v. Dart, 26 Hun. 24; Harris v. Cappell, 28 Kan. 120; McPike v. Atwell, *supra*. As was said in those cases as to the assignment, we may say as to this mortgage: Its validity, as against creditors, is not now before the court; the only question being, is it evidence of fraudulent intent? While, therefore, the mortgage executed to its president by the corporation may have been ineffectual to give its president a preference over its other creditors, it affords but very slight, if any, evidence of bad faith, or an actual intent to defraud its creditors. In other words, it may be constructively fraudulent, as to creditors, but not actually fraudulent, or made with an actual intent to defraud creditors. The mere mistake of the corporation as to its legal rights affords no evidence of a fraudulent intent. We are unable to discover from the affidavits in this case any material evidence that sustains the plaintiff's charge in his original affidavit. The circumstances proven by the plaintiff are all consistent with the most perfect good faith on the part of the corporation and its president. The defendant makes it clear, from its affidavits, that the ore extracted from the mine did not prove as valuable

as it anticipated, during the latter months preceding the attachment, and that it divided its proceeds, as far as possible, among its creditors. Mere inability to pay, or insolvency, is not alone a ground for an attachment. The theory upon which an attaching creditor is allowed to proceed and obtain a lien upon the debtor's property in this class of cases, is that there has been a disposition of the debtor's property, for a fraudulent purpose, while the creditor's debt is unpaid, and which will tend to make it more difficult for him to collect his debt, and is an injury for which he is entitled to an attachment. But when the debtor does no act of which the creditor has a right to complain, while he is such creditor, we are unable to discover any theory upon which such creditor can invoke the extraordinary remedy of an attachment.

But in the case before us there seems to be a very serious question as to whether the plaintiff is in a position to attack these mortgages. As before stated, the indebtedness for which the warrant of attachment was issued was incurred several months after the mortgages were executed. Upon what theory then, can the plaintiff be heard to complain of the disposition of property prior to the time his indebtedness accrued? Neither the text books nor reports afford us much light upon this question. But it would seem, upon principle, that one contracting a debt after property has been mortgaged, and the mortgages duly recorded, cannot be heard to say that such mortgages were made with intent to defraud creditors, as grounds for an attachment. The debtor in this case had made no change in the status of its property, to the prejudice of the plaintiff, after he became a creditor. It made no disposition of its property, of any kind or for any purpose, after the debt was contracted. If the creditor may invoke the remedy on the ground that months prior to the time he became a creditor the debtor disposed of his property with intent to defraud his creditors, why may he not go back as many years to seek grounds for an attachment? We think the only proper rule to

adopt in such a case is one that will preclude any creditor from obtaining an attachment upon any ground existing prior to the inception of his own debt, of which he had actual or constructive notice.    The mortgages executed by the defendant in August, 1893, were recorded in September of that year; and being matters of record, the plaintiff was bound to take notice of them.    He may have had, as he states, no actual notice, but he must be conclusively presumed to have had constructive or legal notice of these mortgages.    Whatever, therefore, may have been the rights of creditors who were such at the time the mortgages were executed, the plaintiff clearly had no ground for an attachment when his warrant of attachment was issued.    The defendant had done nothing to prejudice plaintiff's rights after he became a creditor.    So long, therefore, as the defendant's property remained in the same condition substantially as it was when plaintiff's debt was contracted, the plaintiff could have no ground for attachment, as the defendant had made no disposition of its property, nor was about to make any, of which the plaintiff could complain.    In either view of the case, therefore, the order of the court sustaining the attachment cannot be sustained.    The order of the court below is reversed.