## John L. Woods v. Robert A. Robertson and another.

*Sales : Agency : Ratification : Attachment : Bond to release property.* Where
   suit is brought for the purchase price of certain chattels and an attachment is
   levied on the same property claimed to have been sold to defendants, the giv-
   ing of a bond to release the property from the writ is not a recognition of it
   as theirs, and can have no force as a ratification of an unauthorized purchase
   by another.

*Contract construed : Agency : Purchases on credit.* A contract to receive from
   another within a given time a certain maximum amount of staves of certain
   kinds and sizes, at a specified profit beyond what they cost him, and to pay,
   as fast as he renders statements of purchases, a sum large enough to make him
   good, reserving commissions until the final delivery, is held not to be a con-
   tract of agency such as to authorize him to bind his consignees by a purchase
   on credit.

*Judgment : Findings : Purchases on credit : Agency.* Findings in such a case,
   that the staves were sold on defendants' credit, that their agent knew purchases
   were sometimes made by their contractee without paying for them in full, and
   that he sometimes advanced money to the latter without waiting for state-
   ments, and that the buying of staves is usually carried on partly on credit, in
   the absence of any finding that defendants or their agent had knowledge of
   any purchases in their name or on their credit, or that there had ever been
   any interviews or transactions with plaintiff, are not incompatible with the
   judgment rendered for the defendants.

*Heard October 29.      Decided January 6.*

Error to Sanilac Circuit.

*Divine & Wixson* and *Pond & Brown,* for plaintiff in error.

*Moore & Griffin,* for defendants in error.

CAMPBELL, J.

Woods sued Robertson & Bergen in assumpsit by pro-
ceedings in attachment, under which certain staves were
levied on, and released on being bonded by the defendants.
The suit was brought to recover four hundred and fifty-one
dollars and forty-eight cents, the value of certain staves
bought, but not paid for, by one Partridge, whom plaintiff
claimed to have been acting on behalf of defendants as an
authorized agent.  Some of the staves levied on were among
those sold by plaintiff to Partridge.

WOODS *v.* ROBERTSON.

The authority under which plaintiff claims Partridge to have become agent was a contract between defendants and Partridge, the parts of which, pertinent to the question, are as follows:

"The said Robertson & Co. agree with the said Partridge to take delivery of such good merchantable staves as he shall purchase for them during the winter of 1872–3, to the extent of 300 or 350 M. of the kind, quality and maximum price following, to-wit:" (here follow descriptions and prices). "The said Partridge will render monthly statements of staves purchased, and will make every endeavor to purchase at prices under said maximum rate, for the interests of the said Robertson & Co.; said statement shall be sent Samuel W. Thompson, Jr., Esq., agent of the said Robertson & Co. at Detroit, and shall show the kind and dimensions of staves purchased, and the said Thompson shall furnish such necessary funds for the purchase of staves, timber, teaming and delivering on board of vessels, as may be needed or required; provided, however, that no money shall be furnished for timber beyond the quantity that can be worked up during said winter of 1872–3. The said prices represent the gross maximum prices per M. which the said Robertson & Co. pay for staves to be delivered on or before the first day of July, 1873, on board of vessels; and the said Partridge, for a valuable consideration, hereby agrees that the said cargoes of staves shall agree on board vessels, and also that the whole amount of staves put on board shall agree with the amount of staves billed. In consideration of the premises, the said Robertson & Co. agree to and with the said Partridge that said Robertson & Co. will pay him commissions therefor, as follows: for pipe staves at the rate of ten dollars per M.," etc. All commissions for the different kinds were a fixed sum per thousand.

The court below held that this agreement did not constitute Partridge an agent to buy staves on the credit of defendants, and that bonding the goods was no acknowledgment of liability.

Plaintiff in error relies on certain findings of fact, which he claims entitled him to judgment, which are: that the staves were sold on defendants' credit, and that the agent, Thompson, knew that Partridge sometimes bought staves without paying for them in full, and that the buying of staves is usually carried on partly on credit, and that Thompson sometimes advanced money before waiting for statements, and sometimes did not.

There is, however, no finding that Thompson or defendants knew that any purchases were made in their name or on their credit, nor that there had ever been any interviews or transactions with plaintiff.

The case, therefore, must turn, as the court below made it turn, on original authority or subsequent recognition.

If there was no original authority, it is difficult to see how there was any recognition. The suit was brought before the bond was given, and before the alleged recognition took place. If no bond had been given, the plaintiff must have made out his case on original authority, and that was the only basis of the attachment oath, without which he could not have brought the suit, the defendants being non-residents. The statute makes no provision for bonding less than the entire property seized. The attachment was valid against any of defendants' property; and to release it they had to give bond to pay any judgment, or have the property ready to satisfy it. They gave bond to pay any judgment that might be rendered. The court finds there was no evidence that they claimed those staves which were bought on credit of plaintiff, as their own, unless giving the bond is such a claim. The bond simply releases the attachment, and restores the property to the defendants, or the person in whose possession it is found. It does not give them any right which they did not possess before. It creates no privity with plaintiff concerning the property, or any of his dealings with it. By suing for its value he disclaims any ownership, and a levy on one parcel of chattels does not concern him any more than a levy on others.

His claim must depend on its own merits, and it is nothing to him what title the defendants rely upon to property in which he has no interest.

The contract is peculiar, and requires some study to understand. But, upon a comparison of all its parts, we think it is not a contract of agency.

The defendants' contract was to receive from Partridge such staves, within a certain amount, as he shall deliver on board, and to pay him a maximum rate per thousand "for staves to be delivered on or before the first day of July, 1873, on board of vessels." The contract contemplates monthly statements of staves purchased, to be made to Mr. Thompson, the agent at Detroit, and he is to furnish such necessary funds, "for the purchase of staves, timber, teaming and delivering on board of vessels, as may be needed or required," so that the gross prices of the staves, when delivered on board, shall not exceed the sums named per thousand. There is nothing in this which requires him to advance money for staves not yet purchased, nor for any whereon .the purchase price and cost of teaming and delivery will exceed the maximum. But there is one item which seems to put the proper construction beyond doubt. The contract contemplates that Partridge may purchase stave timber, which will require working into staves after its purchase, and that he may purchase more than can be worked up in the winter of 1872–3. It expressly declares that no money shall be advanced for any more timber than can be so worked up. There is as much authority for buying timber on credit, as staves on credit, and the amount of staves is limited between 300 and 350 thousand, instead of such as he shall purchase within some fixed time, which is the only kind of limitation which would enable dealers with him to know whether his power was exhausted. It would be utterly impossible for any one to know, except by his own statement, whether he had authority to deal with them for any particular amount, or at all.

The agreement is, to take from Partridge a certain maximum amount of staves at a specified profit beyond what they cost him, and to pay, as fast as he renders statements of purchases, a large enough sum to make him good, reserving commissions until the final delivery. It gives him no authority to incur debts for defendants, and they only bind themselves to accept delivery of a certain quantity of specified kinds and sizes within certain prices. They know nothing of any other person, and are to deal with no other person. The money is to be advanced to Partridge, and there is no right to pay it to any one else. They could not discharge themselves by any revocation, and he was not prevented from making purchases to any extent, if he chose, for himself, so long as he furnished them the quantity specified at the best prices.

We think the judgment should be affirmed, with costs.

The other Justices concurred.