## GEORGE P. GORE v. HIRAM W. RAY.

*Dissolution of attachment—Effect of judgment in main suit—Fraud—Evidence—Chattel mortgages—Bona fide indebtedness.*

1. Proceedings for the dissolution of an attachment are not superseded by the rendition of judgment in the case, and the defendant has a right to a hearing upon the issue made in such proceedings, unless he has in the mean time voluntarily parted with his right to the possession of the property, or by some other act estopped or debarred himself from insisting upon a dissolution. *Association v. Printing Co.*, 58 Mich. 487; *Publishing Co. v. Association*, 61 Id. 337.

2. The execution of chattel mortgages by a debtor to secure *bona fide* creditors, or to procure money actually used in the payment of honest debts, affords no legal ground for attachment proceedings, and the fact that their execution may have cut off the redress of another creditor, whose claim the debtor refused to secure, and that such was the debtor's intention, is no evidence of an intent to defraud creditors.

3. Where a debtor executed a chattel mortgage, absolute on its face, to a party to whom he was not indebted, for the aggregate amount actually due several of his creditors, and received from the mortgagee an agreement containing a list of said creditors, with the amount due each, and conditioned for the payment of said creditors on the payment to the mortgagee of the amount of the mortgage, or, if only paid in part, then for their *pro rata* payment, the two papers will be taken together as showing the entire transaction, which is not fraudulent as to other creditors, if entered into with a *bona fide* intent to pay the creditors named, which is a question for the jury.

*Certiorari* to Berrien. (Smith, J.) Argued January 9, 1889. Decided January 18, 1889.

*Certiorari* to review proceedings resulting in the dissolution of an attachment. Proceedings affirmed. The facts are stated in the opinion.

*A. H. Potter (C. B. Potter* and *Clapp & Bridgman,* of

73 MICH—25.

counsel), for George P. Gore, petitioner in *certiorari* and respondent in proceedings for dissolution, contended:

1. In these cases we understand the question of fraudulent intent to be one of fact, and that the court cannot declare the intent as a question of law, resulting from any combination of facts; citing *Buck v. Sherman*, 2 Doug. 180; *Pierson v. Manning*, 2 Mich. 454; *Sweetzer v. Mead*, 5 Id. 107; 111; *Hubbard v. Taylor*, Id. 155, 162, 163; *Oliver v. Eaton*, 7 Id. 108, 114; *Bagg v. Jerome*, Id. 145, 157; *Gay v. Bidwell*, Id. 519, 524; *Pierce v. Hill*, 35 Id. 194, 199; *Fearey v. Cummings*, 41 Id. 376, 384; *King v. Hubbell*, 42 Id. 597, 599, 600; and an intent to defraud one creditor is sufficient to invalidate the transfer; citing *Allen v. Kinyon*, 41 Mich. 281, 285.

*N. A. Hamilton* and *L. C. Fyfe*, for Hiram W. Ray, defendant in *certiorari* and petitioner in proceedings for dissolution, contended for the rules stated in the opinion, citing the authorities therein cited.

LONG, J. On December 20, 1886, George P. Gore sued out of the circuit court of Berrien county a writ of attachment. The writ was placed in the hands of the sheriff of said county, and he levied the same upon a stock of boots, shoes, etc., of the defendant. Issue was joined in the cause, and upon a trial had therein on April 25, 1887, judgment was rendered in favor of the plaintiff and against the defendant for the sum of $296.43.

It appears that after the writ of attachment had been served, and the goods taken by the sheriff, the defendant in the writ, Hiram W. Ray, made a petition to a circuit court commissioner of Berrien county for a dissolution of the writ. A hearing was had upon the petition before the commissioner, who made an order dissolving the writ. From this order Gore appealed to the circuit court for Berrien county, and the cause was brought on for hearing in said court on April 28, 1887, before a jury, who returned a verdict in favor of the petitioner, dissolving

the writ of attachment, and judgment was entered on said verdict by the court.

The cause comes to this Court by *certiorari* to review those proceedings. The principal allegation of error stated in the affidavit for the writ of *certiorari* is:

"The court erred in taking further cognizance of this proceeding for the dissolution of the attachment after it was shown that judgment had been previously rendered and entered in the principal cause commenced by said writ."

Error is also alleged upon certain portions of the charge of the court and the refusal of the court to give respondent's requests in charge to the jury. The charge in the affidavit upon which the writ of attachment issued is—

"That deponent has good reason to believe, and does believe, that the said Hiram W. Ray is about to dispose of his property with intent to defraud his creditors."

This allegation in the affidavit for the writ of attachment is denied in the petition for the dissolution of the writ of attachment.

It appeared on the proceeding to dissolve the writ in the circuit court that Gore was doing business in the city of Chicago, and that Ray was engaged in a retail business at St. Joseph, in Berrien county, this State, during the year 1886. Gore sold to Ray during that year several bills of goods, aggregating about $673.49. While Ray was owing Gore for these goods, he executed a chattel mortgage upon his stock; and, this fact coming to the knowledge of Gore, he sent his agent out from Chicago to investigate Ray's financial condition. The agent arrived at St. Joseph on Saturday evening, December 18, 1886, about 7 o'clock, and it is claimed by the respondent that an agreement was then made between the agent and Ray and his attorneys that they would

meet on the next morning at 9 o'clock, and in the mean time Ray should not dispose of the stock; that a meeting was had the next morning, and adjourned by request of Ray until 2 o'clock in the afternoon, when he was advised by Ray that nothing would be done in the way of giving security to Gore. The agent then started for the county-seat, some 15 miles distant, and on Monday morning returned with the writ of attachment in the hands of the sheriff of the county ; but before the stock could be seized under the writ, Ray had placed eight chattel mortgages thereon, which the agent found filed in the town clerk's office, amounting to some $1,946.26. One of these mortgages, to William F. Sesser, given for the sum of $380.28, was made up by adding together debts which Ray owed to 15 other parties. At the time of the execution of this mortgage Sesser made and delivered to Ray the following agreement:

" Whereas, Hiram W. Ray, has this day given me a certain mortgage in the sum of $380.28, this memorandum witnesseth that the said Ray is to pay me, according to the conditions of said mortgage, said sum, and I am to pay such sum, when so paid to me, to the following-named persons, creditors of said Ray, immediately on the receipt thereof; it being understood that said Sesser takes no obligation upon himself other than the faithful execution of said trust, to wit:   [Here follow the names of the persons and the amount to be paid to each.]   Such mortgage being taken by said Sesser on the assurance of said Ray that the above-named indebtedness is *bona fide*. Should only a part of said sum be paid said Sesser, such part is to be paid *pro rata* to each of said creditors."

The respondent, to sustain the allegation in the affidavit for the writ that " the defendant is about to dispose of his property with intent to defraud his creditors," offered in evidence the said eight chattel mortgages, together with the mortgage so executed by Ray to Sesser. Respondent also called Ray as a witness, who testified that he

actually owed the amount to the parties mentioned in the mortgage, and that he gave the same to secure these creditors; that he did it hurriedly, and for the purpose of giving them before the agent of Gore could get a writ of attachment. One of the mortgages mentioned was given to a Mr. Wells for the sum of $385.75. It appeared upon the hearing that Ray was indebted to Mr. Wells in the sum of about $185.75, prior to December 18, 1886, and that after the agent of Mr. Gore came there, and about the time these mortgages were executed, he borrowed $200 additional of Mr. Wells, and included that amount in his chattel mortgage; that this money was used by Ray in the payment of indebtedness owing by him to different parties.

At the close of the testimony the respondent requested the court to charge the jury:

"1. The jury are instructed that the plaintiff, Gore, has obtained judgment in his suit by attachment; that a judgment has been rendered in the principal case, and that therefore these proceedings are superseded by the rendition of such judgment, leaving nothing to be tried in the matter now before the jury; and that the verdict should be for the respondent.

"2. The jury are instructed that the rendition of judgment in the principal case dissolved the attachment by which the suit was commenced, and that therefore the verdict of the jury should be for the respondent.

"3. The jury are instructed that where an application is made to dissolve an attachment, which has been issued as commencement of suit and levied upon defendant's property, and issued upon the ground that the defendant has disposed of his property, or is about to do so, to defraud his creditors, the principal question is one of intent. And in this case, if the jury find from the evidence that Ray intended by these mortgages to defraud his creditors, then their verdict should be for the respondent.

"4. The jury have heard the testimony of Ray in his own behalf, in which he says that these mortgages were given to shut off the attachment suit which he appre-

hended Gore was about to commence. If the jury believe his statements, or find from the other testimony in the case that such was the fact, then their verdict should be for the respondent.

"5. It appears as an undisputed fact that Ray created an additional indebtedness from himself to Wells on the morning of December 20, or the day the writ of attachment was issued, and embraced this additional indebtedness in his mortgage to Wells, given on that date. This was fraudulent as to the creditor Gore, and your verdict should be for the respondent."

These requests the court refused to give in charge to the jury, and, as we think, very properly.

The fact that a judgment had been rendered in favor of the plaintiff on the merits of the case for the amount of the debt claimed to be due, could in no manner affect the right of the defendant in the attachment to his order for a dissolution of the writ. The petition made by the defendant in the writ before the commissioner put the matter in issue stated in the affidavit for the writ, that the "defendant was about to dispose of his property with intent to defraud his creditors," and the burden was upon the plaintiff in the writ to establish that fact in the proceedings under the petition for a dissolution, and, failing in this, the defendant in the writ had the right to have the writ dissolved. These proceedings are not superseded by a rendition of judgment in the case, and the defendant has a right to a hearing upon the issue made, unless he has in the mean time voluntarily parted with his right to the possession of the property, or by some other act estopped or debarred himself from insisting upon a dissolution. *Drs. K. & K. Med. & Surg. Association v. Printing Co.*, 58 Mich. 487 (25 N. W. Rep. 477); *Calvert, etc., Publishing Co. v. Association*, 61 Id. 337 (28 N. W. Rep. 111).

There are several allegations of error in the affidavit for the writ of *certiorari*, based upon the charge of the

court as given to the jury. We have examined the charge carefully, and find no error in it. It appeared that Ray was indebted to these various parties to whom the mortgages were given, and in the amounts stated in the mortgages. The money borrowed of Wells, and included in his mortgage, was paid out to different parties to whom the defendant was indebted, and is no evidence of an intent to defraud creditors; but, on the other hand, it evinced a desire to protect these smaller creditors by payment of their debts, instead of giving so many different mortgages. The moneys went to pay off an honest indebtedness, and, although it may have cut off the redress of the plaintiff, and the defendant intended to do so, it was not evidence of an intent to defraud creditors.

It was conclusively shown upon the hearing, and in fact not disputed or attempted to be controverted, that Ray was indebted to all these parties to whom the mortgages were given except Sesser. Ray was under no legal obligation to secure Gore by mortgage unless he chose, and it is no evidence of fraud that he did secure other *bona fide* claims, and refused to secure Gore. *Jordan v. White*, 38 Mich. 253. It appears that the mortgage given to Sesser did not state that it was given in trust for the several parties to whom the money was to be paid by Sesser, when paid on the mortgage, but this fact was shown on the trial by the paper made at the same time of the mortgage, and executed by Sesser, agreeing to so apply these moneys. It is not questioned that the defendant actually owed the moneys to the parties named in the agreement, and in the amounts therein stated. These two papers,—the mortgage and the agreement made by Sesser,—taken together, show the transaction, and the question whether the Sesser mortgage was intended as a fraud upon creditors of Ray was fully and fairly submitted to the jury by the court.

Upon this branch of the case the court charged the jury as follows :

"The only question is, in giving this mortgage to Sesser, and having Sesser agree to pay certain men when he should pay him, whether in doing that it was his intention,—his *bona fide* intention,—to pay these men, or whether it was done to keep that much of his property from his creditors. That is the question for you. If it was done *bona fide*, with the intent that he would pay them, then there was no fraud about it. If it was done with the intent to save that amount of money to himself, if there is any evidence of that, that would be fraudulent."

In this the court was correct, and the charge was as favorable to the respondent as the facts warranted.

We find no error in the record, and the judgment of the court below must be affirmed, with costs.

The other Justices concurred.