JIM CAUSLEY PONTIAC INC.

*v.*

WORLD WIDE AUTO LEASING COMPANY

1. ATTACHMENT — RELEASE OF ATTACHED PROPERTY — POSTING OF BOND.

The defendant or any other person in whose possession attached property is found can file a release bond (GCR 1963, 735.11).

2. ATTACHMENT—BOND—SURETIES—DEFENSES.

A surety who has covenanted in a bond given to release attached property cannot defend on the bond by arguing that the property when attached belonged to a stranger.

3. ATTACHMENT—SURETY—ACTION ON BOND—DEFENSES.

A surety on a bond to release attached property who does not claim any interest in the attached property is without standing to move for the dissolution of the attachment.

Appeal from Wayne, Horace W. Gilmore, J.  Submitted Division 1 June 5, 1970, at Detroit.  (Docket No. 6,819.)  Decided August 24, 1970.  Leave to appeal denied December 1, 1970.  384 Mich 785.

REFERENCES FOR POINTS IN HEADNOTES

[1]  6 Am Jur 2d, Attachment and Garnishment § 523.
[2, 3]  6 Am Jur 2d, Attachment and Garnishment §§ 526, 545.

Complaint by Jim Causley Pontiac, Inc., against World Wide Auto Leasing Company, Inc., for breach of contract. Defendant's property, attached prior to judgment, released when surety, Resolute Insurance Company, filed bond. Judgment for plaintiff, and motion for entry of judgment on surety's bond granted. Surety appeals. Affirmed.

*McClintock, Fulton, Donovan & Waterman (Harry A. Carson* and *Edward F. Langs,* of counsel), for plaintiff.

*Norman L. Zemke, P.C.,* for surety, Resolute Insurance Company.

Before: J. H. Gillis, P. J., and Levin and Borradaile,* JJ.

Levin, J.  The plaintiff, Jim Causley Pontiac, Inc., commenced this action by attachment to recover the unpaid balance of the purchase price of automobiles sold to the defendants World Wide.[1]  The sheriff attached a Buick automobile which was subsequently returned to World Wide when it furnished a bond to release the attachment.[2]

Jim Causley Pontiac obtained a money judgment against World Wide and subsequently moved for entry of judgment in the amount of the bond against Resolute Insurance Company, the surety on the bond.  Resolute then moved for dissolution of the

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] The original complaint named only World Wide Auto Leasing Company, Inc. as the defendant.  In an amended complaint Donald Golden, doing business as World Wide Auto Leasing Company, was added as a party defendant and it was alleged that the corporate defendant is the *alter ego* of the added individual defendant.

[2] "In every case where property is attached or garnishment is served, the attachment or garnishment may be dissolved by the posting of a bond in accordance with the rules of the Supreme Court." MCLA § 600.4045 (Stat Ann 1962 Rev § 27A.4045).

attachment on the ground that the Buick automobile had been transferred by World Wide to a third party before it was attached and consequently did not belong to World Wide at the time of the attachment. The trial judge denied the motion for dissolution of attachment and entered a judgment in favor of Jim Causley Pontiac against Resolute. Resolute claimed an appeal from the judgment on the bond.[3] We affirm.

The issue presented was considered in the early case of *Dorr* v. *Clark* (1859), 7 Mich 310. Clark commenced an action by attachment against Philo Durfee and Samuel T. Atwater. Dorr and others filed a bond undertaking to produce the attached property. After judgment against Durfee and Atwater, Clark commenced an action on the bond against Dorr and the other sureties and they sought to defend upon the ground that the affidavit in attachment was defective and upon the further ground that the property when seized belonged to Sidney S. Durfee. The Michigan Supreme Court held that the affidavit was sufficient[4] and that the sureties could

---

[3] While the papers seeking dissolution of the attachment, including the claim of appeal, were filed in behalf of Resolute and Charles B. Goldfarb, who signed the bond as Resolute's attorney-in-fact, since the bond was not signed by him personally and the judgment sought and obtained by Jim Causley Pontiac was entered against Resolute, and not as well against Mr. Goldfarb, it would appear that the only surety in interest is the corporate surety, Resolute.

[4] See *Butcher* v. *Cappon & Bertsch Leather Co.* (1907), 148 Mich 552, where, after the defendant's petition for dissolution of the attachment was denied, the Court having found that plaintiffs had a legal claim and good cause for attachment, the defendant filed a bond to pay any judgment rendered. Thereafter, the defendant moved to *quash* the proceedings (see *John D. Gruber Co.* v. *Montcalm Circuit Judge* [1914], 183 Mich 477) for the reason, among others, that the affidavit was defective. The Supreme Court ruled that the affidavit was jurisdictionally defective and that it was not amendable, but affirmed the order overruling the motion to quash, it would appear, from the citation of *Paddock* v. *Matthews* (1853), 3 Mich 18, and from the basis on which the Court distinguished *Reynolds* v. *Marquette Circuit Judge* (1901), 125 Mich 445, on the ground that by furnishing the statutory bond the defendant waived any defect in the affidavit.

not defend by showing that the property when attached belonged to a stranger.

The substance of the statute construed in *Dorr* does not differ significantly from the present court rule governing attachment release bonds. Under both former and present practice, the defendant or any other person in whose possession the property is found can file a release bond.[5] Under the former practice the bond could be either a judgment bond or a forthcoming bond.[6]

The distinction between a judgment bond and a forthcoming bond has been blurred and perhaps eliminated under the present court rule. It provides that the bond shall take the form of a judgment bond: "conditioned upon the payment of any judgment entered in the case against the defendant within 60 days after it is entered." But, by providing that "the production of the attached property after judgment by the bondsman shall relieve him of other liability on the bond," the rule also incorporates the principal distinguishing feature of the forthcoming bond.

The bond filed in this case is in the statutory form and, thus, is conditioned upon payment of any judgment within 60 days. But it also expressly provides that the production of the attached property would relieve the surety from liability. Whether the additional provision is mere surplusage or, as said in another early case, "an impertinent provision[7]," or whether it changes the nature of the bond

---

[5] See CL 1857, §§ 4754–4757; CL 1897, §§ 10567–10570; CL 1929, §§ 14777–14780; CL 1948, §§ 626.15–626.18. The present provision is fundamentally the same, see GCR 1963, 735.11(1); *cf. King* v. *Hubbell* (1880), 42 Mich 597, 603.

[6] See CL 1857, § 4755; CL 1948, § 626.16.

[7] In *Goebel* v. *Stevenson* (1876), 35 Mich 172, the Court regarded the double aspect of the bond there in suit—it was both a judgment and a forthcoming bond—as a "peculiarity." There, as here, the sureties did not offer to produce the property (p 188) "but have left it as an impertinent provision. * * * There is nothing to cause

filed by Resolute from a judgment to a forthcoming bond or to a hybrid judgment-forthcoming bond is, we think, of no importance.  The *Dorr* rule applies whether the bond is in form a judgment bond or a forthcoming bond (p 313) :

"If they [the sureties] had covenanted to pay the judgment, it could hardly be urged in defense that the property, when attached, belonged to a stranger.  The law does not oblige anyone to bond such property, and if he assumes, for the sake of obtaining it, to pay the debt, it is his own folly if he do so unwisely.  The case is not different where he undertakes to return the attached property.  He should not meddle with it until he knows what he can do safely.  There is no injustice in the statutory rule.  But just or unjust, the statute is peremptory, and admits of no remission.  Judgment can be rendered for nothing short of the amount necessary to comply with the condition.  Where, as here, it is to return the property to satisfy the execution, the value of the vessel being less than the balance due, judgment was proper for that value:  CL 1857, § 4757.  This view is sustained by authority.  See Drake on Attachments, § 312, *et seq.,* and cases cited.  But the statute is so plain that it is not open to construction."

The authors of Michigan Court Rules Annotated have commented that the holding in a still earlier case, *Paddock* v. *Matthews* (1853), 3 Mich 18,[8] that

---

controversy concerning the irrelevant provision.  Nothing is or can be claimed under it, whatever force it might have had if defendants [the sureties] had acted upon it."

[8] Similarly, see *Butcher* v. *Cappon & Bertsch Leather Co.* (1907), 148 Mich 552.

The present court rule contains language paralleling that construed in the cited case (see CL 1857, §§ 4774, 4775; CL 1948, §§ 626.49, 626.50, which restate the amendatory act [PA 1851, No 125] referred to in the opinion):

"If it is determined that the attachment of the property is not valid, the attachment shall be dissolved and *the property restored to the defendant.*"  (Emphasis supplied.)  GCR 1963, 735.13(5).

a defendant in an attachment action cannot obtain dissolution of the attachment after he files a release bond, is out of harmony with the spirit of the General Court Rules of 1963[9] that under the new rules defenses and objections are lost only by failure to assert them at the proper time,[10] and that a defend-

---

The *Paddock* Court reasoned that where a defendant posts a bond he cannot avail himself of the provisions of the amendment because his property had already been restored to him and, thus, the function of the dissolution provision had been obviated by the defendant's action in posting the bond (p 23):

"[W]here a party, defendant, instead of having the validity of the attachment inquired into, under the provisions of the amendatory act, elects in the first instance to give his bond under the original act, and in that way obtain a release and restoration of his property, he cannot subsequently avail himself of the provisions of the amendment."

[9] 4 Honigman and Hawkins, Michigan Court Rules Annotated (2d ed), authors' comments, p 545.

[10] In *Hyde* v. *Nelson* (1863), 11 Mich 353, the Court rejected the contention that by entering an appearance the defendant waived his right to seek dissolution of the attachment. But in *The Gunn Hardware Company* v. *Denison* (1890), 83 Mich 40, it was held that an objection to the introduction of evidence based on the insufficiency of an affidavit for attachment was properly overruled because (p 42) "[b]y appearing to the action and pleading the general issue, the defendant waived all irregularities in the prior proceedings".

In *John D. Gruber Co.* v. *Montcalm Circuit Judge* (1914), 183 Mich 477, the defendant appeared and after the case was at issue and ready for trial moved to quash the attachment. The Supreme Court held that the trial judge erred in quashing the attachment, citing *Gunn* and other cases for the rule that such a motion must be made before the defendant enters his general appearance and pleads to the merits. *Hyde* v. *Nelson, supra,* was distinguished on the ground that there the defendant had sought dissolution of the attachment under the statute (see footnote 8), not quashal of the attachment; *cf. Butcher* v. *Cappon & Bertsch Leather Co., supra.*

In the subsequent case of *Leib* v. *Bostwick* (1931), 256 Mich 277, the defendant petitioned for dissolution of the attachment and after denial of his petition entered a general appearance and then made a second application to dissolve the attachment. It was contended that the defendant was estopped from applying for dissolution of the attachment after entering a general appearance and filing an answer to the declaration. The Supreme Court said that this contention was without merit, citing *Hyde* v. *Nelson* and *John D. Gruber Co.* v. *Montcalm Circuit Judge.* See, also, *Bryant* v. *Hendee* (1879), 40 Mich 543; *Woodruff* v. *Ives* (1876), 34 Mich 319; *Levy* v. *Gittelson* (1949), 324 Mich 242, 248; GCR 1963, 111.3.

It is generally held in other jurisdictions that if a defendant wishes to take advantage of any defect or irregularity in the attachment proceeding he must do so by motion or plea before answering to the

ant should not forfeit his defenses by seeking imme-
diate relief from an attachment by filing a bond.[11]

merits. Anno: Answering to merits or giving bond for release of
attachment as waiver of objections to attachment, 72 ALR 120.

[11] While there is a sharp division in the authorities in other juris-
dictions as to whether defects or irregularities in the attachment
proceedings are waived by the filing of a release bond (see Anno:
Answering to merits or giving bond for release of attachment as
waiver of objections to attachment, 72 ALR 120, 127), there appears
to be general agreement that the filing of a release bond waives the
defense that the property attached belongs to a stranger. See
Anno: Right of surety on bond given to prevent, or secure the
release of, attachment after recovery by plaintiff of judgment in
attachment action, 89 ALR 266, 274; 6 Am Jur 2d, Attachment
and Garnishment, § 544; see, also, §§ 540–543; 7 CJS, Attachment,
§ 313, p 504; see also, pp 500–503.

The courts which hold that the filing of a bond does not waive
defects or irregularities generally do so on the ground that the legis-
lative purpose underlying the bond posting provision, namely, that
one whose property has been summarily seized should be able to
recover it without delay, would be undermined if, in order to avail
himself of such remedy, the owner must waive his right to attack
the legality of the summary seizure. That reasoning is less persuasive
where the defendant does not claim a property interest in the
attached property.

There may be cases where the defendant is in possession of prop-
erty belonging to another and is under some constraint to obtain
the release of the attached property. As to that case, we can only
say that it is not before us and, also, that we are bound by *Dorr* v.
*Clark, supra,* which arose under a statute containing language that,
in pertinent part, has remained the same through the present (see
footnote 5) and, also, that a third party claiming an interest in
the attached property has a remedy under GCR 1963, 757, by com-
mencing an action of claim and delivery (formerly replevin). *Cf.*
*Hain* v. *Newell* (1923), 223 Mich 20, where the Court was able to
distinguish *Paddock* v. *Matthews* (1853), 3 Mich 18, from the case
at hand, as follows (p 27):

"[T]he bond releasing [the] attached property there [in *Paddock*]
was given voluntarily, the parties standing at arms' length on tech-
nicalities, and without stipulation or order of the court reserving
any rights to either party."

The filing of a bond by a person other than the defendant would
not, of course, waive the defendant's right to object to defects and
irregularities in the proceedings, see *Pierce* v. *Johnson* (1892), 93
Mich 124, where the Court observed (p 127): "Neither of the de-
fendants was a party to the bond." In the case at bar, World Wide
signed the bond as principal.

The posting of a bond by a defendant does not relieve the plain-
tiff of his obligation to prove the contract relied on in the action. See
*Woods* v. *Robertson* (1875), 31 Mich 64.

While the garnishment court rule differs significantly from the
attachment court rule (but see RJA § 4045 quoted in footnote 2),
from the standpoint of policy the underlying considerations have

Whether the filing of a release bond should bar the defendant himself from later advancing all or some defenses to the attachment need not be considered in this case. The court rule provides that the dissolution of an attachment may be sought by "any person whose property is attached or who is in possession of or has an interest in property attached".[12] Resolute, which claimed no interest in the Buick automobile, was, therefore, without standing to seek dissolution of the attachment[13] and World Wide, which did have standing and which at an early stage had sought to have the action dismissed,[14] has not appealed.

---

much in common. As to garnishment bonds, see *Lee* v. *Egren* (1970), 383 Mich 480, holding that a motion to quash a garnishment after the garnishment has been terminated by the giving of bond is error; as to replevin bonds, see *Lindner* v. *Brock* (1879), 40 Mich 618, 621.

[12] GCR 1963, 735.13(1).

[13] In this case Resolute's motion to dissolve the attachment was filed after judgment was rendered in favor of Jim Causley against World Wide. Resolute's brief cites *Gore* v. *Ray* (1889), 73 Mich 385, for the following proposition, taken from 4 Honigman and Hawkins, Michigan Court Rules Annotated (2d ed), p 546:

"An application for dissolution may be made at any time, even *after* judgment in the principal action." (Emphasis supplied.) That is an erroneous statement. The report in *Gore* v. *Ray* does not show when the defendant in that case moved for dissolution of the writ of attachment, whether before or after judgment. In a later case, *John D. Gruber Co.* v. *Montcalm Circuit Judge* (1914), 183 Mich 477, 479, *Gore* v. *Ray* is cited for the proposition that (p 479) "a petition to dissolve may be *granted* even after judgment" (emphasis supplied) but that, of course, does not reach the question whether the petition itself must be filed before judgment.

In the early case of *Hyde* v. *Nelson* (1863), 11 Mich 353, the Court construed the statute (PA 1851, No 125, CL 1857, § 4773 *et seq.*) which, as subsequently amended (see CL 1948, § 626.48 *et seq.*) is now set forth in GCR 1963, 735.13 (and which in pertinent part does not differ from the 1851 statute), and held that a defendant whose property is attached may move to dissolve the attachment "at any time *before* judgment. * * * After judgment there would be no propriety in such a motion, because the property is then liable to an ordinary execution." (Emphasis supplied.)

[14] World Wide filed a special appearance and a motion to dismiss, alleging, among other things, that the attached property was not owned by it at the time of the attachment. An order was entered denying the motion. World Wide answered, the case was tried, and, as previously mentioned, a judgment was entered in

The cases cited by Resolute are not in point. In *Reynolds* v. *Marquette Circuit Judge* (1901), 125 Mich 445, the statute pursuant to which the bond was filed required that it be conditioned upon payment of all damages, etc. that might be recovered by the plaintiff against the defendant "found to be a lien upon or against the products described in said writ." (PA 1887, No 229, CL 1948, § 426.6), whereas the bond here was conditioned upon payment of the judgment without qualification as to whether the damages adjudicated are found to be a lien upon the attached property.[15] In *Gore* v. *Ray* (1889), 73 Mich 385 the motion to dissolve was filed by the defendant, not by the surety;[16] and, also, no bond was filed to release the attachment.

In summary, we hold that Resolute, the surety on the bond, which does not claim any interest in the attached property, (1) is without standing to move for dissolution of the attachment and (2) may not defend against a motion for entry of judgment on the bond by showing that the property when attached did not belong to the defendant.

---

favor of Jim Causley Pontiac against World Wide. No appeal from that judgment was taken. *Cf. Butcher* v. *Cappon & Bertsch Leather Co.* (1907), 148 Mich 552.

[15] The distinction is carefully noted in the *Reynolds* case itself (p 448):

"The condition of the bond is, not that the owner of the logs will pay any judgment which may be obtained against the principal, but merely that he will pay such sums as may be found to be a lien upon the logs."

See, also, *Butcher* v. *Cappon & Bertsch Leather Co.* (1907), 148 Mich 552, where the same distinction is noted.

[16] In *Detroit & Security Trust Co.* v. *Gitre* (1941), 254 Mich 66, also cited by Resolute, dissolution of the attachment was, indeed, sought by one who was not a party to the action, but the person who there sought dissolution of the attachment claimed to be the owner of the property and, as the Court pointed out, the statute expressly permitted (p 75) "such petition to be filed by 'any other person not a party to the suit' whose property is attached."

The former statutory provision may be found in CL 1948, § 626.48; for the present rule see footnote 12 and accompanying text.

Our disposition of this case makes it unnecessary for us to decide whether the recital in the bond furnished in this case, signed by World Wide, as principal, and Resolute, as surety, that the writ of attachment had been "levied on the property of the said defendant," precluded the introduction of evidence that the defendant did not own the Buick automobile when it was attached.[17]

Affirmed. Costs to appellees.

All concurred.

---

[17] In the following cases it was said that a surety is estopped to deny facts recited in his bond: *Shean* v. *United States Fidelity & Guaranty Co.* (1933), 263 Mich 535 (employment status of employee under fidelity bond); *St. Matthews' Evangelical Lutheran Church* v. *United States Fidelity & Guaranty Co.* (1923), 222 Mich 256 (recital that contractor named in a building contractor's bond is a corporation); *Healy* v. *Newton* (1893), 96 Mich 228 (recital in a supersedeas bond that a personal judgment had been rendered (p 232): "A recital in a bond precludes the parties as an admission of the facts recited."); *Brockway* v. *Petted* (1890), 79 Mich 620, 628 (recital in a liquor dealer's bond that the dealer is carrying on that business).